PARTEL, INC., Plaintiff-Appellee, *v.* HARRIS TRUST AND SAVINGS BANK, Trustee, *et al.*, Defendants.—(MENDEL MARGOLIS, Plaintiff-Appellant.)

First District (5th Division)    No. 81-521

Opinion filed March 31, 1982.—Supplemental opinion filed on denial of rehearing June 30, 1982.

Joel L. Widman and Laurence C. Kozlicki, both of Chicago (Kozlicki, Widman & Schenk, Ltd., of counsel), for appellant.

Allen I. Brown, of Allen I. Brown, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Plaintiff Mendel Margolis (Margolis) appeals from an order which denied his petition for certain escrowed insurance proceeds and reimbursement for maintenance and other costs, and which granted the counterpetition of plaintiff Partel, Incorporated (Partel), for those insurance proceeds. Margolis contends that (1) he is entitled to the proceeds under a mortgage providing that in case of foreclosure such proceeds are payable to the owner of the certificate of sale; and (2) he is entitled to reimbursement for the various costs he advanced.

It appears that Harris Trust and Savings Bank, as trustee (Harris Bank), as the owner and mortgagor of the commercial realty in question, defaulted on the payments of three mortgages—the first in order of priority being held by Chicago Federal Savings and Loan Association (Chicago Federal), the second by Margolis, and the third by Partel. The present dispute arose from consolidated mortgage foreclosure litigation involving those mortgages.

In an order entered on November 21, 1980, the trial court found that Partel's interest in the subject property was inferior to that of Chicago Federal and Margolis, respectively, and it entered a judgment of foreclosure and sale in favor of Chicago Federal and Partel and against Harris Bank. The adjudicated indebtedness to Chicago Federal totaled $160,551.61; that to Margolis was $207,952.37; and to Partel, $127,411.79. The order also provided that the trial court would reserve jurisdiction to enter a deficiency judgment in favor of Partel; that Partel's rights to the insurance proceeds in question were not affected; that public sale be stayed until after January 1, 1981, and that Stuart Kaiserman, who had been appointed managing agent for the premises by agreement of the parties and who managed the premises until the foreclosure sale, could present his petition for fees and costs.

Prior to the November 21 order, the mortgagees had been advised that there would be available to Harris Bank a casualty loss insurance check for $51,573 from a fire in November 1979—before commencement of the instant litigation—and at the time of the foreclosure judgment the parties were directed to endorse the insurance check and place it in escrow, with counsel for Partel as escrowee, pending further court order. Thereafter, Margolis incurred costs of $9,264.35 for guard and maintenance services at the premises.

At the public foreclosure sale on January 6, 1981, Margolis as high bidder offered $392,726.76, which was the entire amount of his adjudicated lien plus the superior lien of Chicago Federal. The sale was approved on January 14, 1981, and a deficiency judgment of $129,171.31 was entered in favor of Partel and against Harris Bank on January 16, 1981.

Margolis moved for a turnover of the insurance proceeds on the basis that he was the successful bidder at the foreclosure sale and for reimbursement of the $9,264.35 advanced for guard and maintenance expenses. Partel counterpetitioned for the same proceeds and, on February 2, 1981, Partel was awarded the proceeds to be applied to the deficiency judgment against Harris Bank, the court holding that because Margolis had extinguished his debt by bidding his entire adjudicated lien, he had no further contractual rights. Finding, additionally, that Margolis' pleadings did not support his claim of partial reimbursement, the court denied the claim without prejudice. This appeal is from the February 25 order.

OPINION

■■ Margolis' principal contention is that, under the mortgage of Chicago Federal, he is entitled to the insurance proceeds in question as the successful bidder at the foreclosure sale. We disagree. Clause 3. A. of that mortgage provides in relevant part:

"The Mortgagor covenants:

\* \* \*

(3) To keep the improvements now or hereafter situated upon said premises insured against loss or damage by fire, \* \* \* as the Mortgagee may reasonably require to be insured against \* \* \*; [S]uch insurance policies \* \* \* shall contain a clause satisfactory to the Mortgagee making them payable to the Mortgagee, as its interest may appear, and in case of foreclosure sale payable to the owner of the certificate of sale, owner of any deficiency [or] any receiver \* \* \*; and in case of loss under such policies, the Mortgagee is authorized to adjust, collect and compromise in its discretion, all claims thereunder \* \* \*."

In *Weiner v. Landry* (1970), 131 Ill. App. 2d 221, 264 N.E.2d 828,

insurance proceeds became available as a result of fire damage to the mortgaged property. The damage occurred after foreclosure proceedings began but before the decree was entered and before the premises were sold to the first and paramount lienholder. At the direction and on behalf of the mortgagor, the first lienholder had placed the insurance on the property, paid premiums as an advance to the mortgagor, and received credit for the premises at the time of sale. At the foreclosure sale, the lien of the first lienholder was liquidated on its bid (except for a small deficiency sum). Citing *Johnson v. Zahn* (1942), 380 Ill. 320, 44 N.E.2d 15, as the source of a presumption that the bid placed on realty at a foreclosure sale by a first lienholder represents the fair cash value of the property, the court held that the subordinate lienholder was entitled to recover the excess insurance proceeds from the first lienholder.

We believe the facts before us compel the same result as in *Weiner*. Here, although the fire loss occurred before commencement of foreclosure proceedings, it also occurred before the judgment of foreclosure and sale. As Margolis does not argue to the contrary, it seems clear that his bid was made with full knowledge of the condition of the premises, of the existence of the insurance proceeds, and of the trial court's order placing the proceeds in escrow to be disbursed pursuant to further order. There also is no indication that Margolis, unlike the first lienholder in *Weiner*, placed insurance on the property, paid the premiums as an advance to Harris Bank, or sought to receive credit at the time of sale. Moreover, at the foreclosure sale, Margolis, like the first lienholder in *Weiner*, bid his entire adjudicated indebtedness, and Margolis refers us to no part of the record which would suggest that he bid anything other than the fair cash value of the property and thus might be entitled to a deficiency judgment.

In *Whitestone Savings & Loan Association v. Allstate Insurance Co.* (1971), 28 N.Y.2d 332, 321 N.Y.S.2d 862, 270 N.E.2d 694, on significantly similar facts, the court held that a mortgagee who obtained the mortgaged property by bidding the full amount of its secured debt at the foreclosure sale was not entitled to a deficiency judgment against the mortgagor, which thereby terminated the mortgagee's interest in a fire loss insurance policy. The same principle has been applied by the courts of other jurisdictions under substantially similar circumstances. (See, *e.g.*, *Smith v. General Mortgage Corp.* (1978), 402 Mich. 125, 261 N.W.2d 710; *Northwestern National Insurance Co. v. Mildenberger* (Mo. App. 1962), 359 S.W.2d 380.) The reasoning of the court in *Whitestone Savings* is particularly instructive:

> "Because a mortgagee is entitled to one satisfaction of his debt and no more, the bidding in of the debt to purchase the mortgaged property, thus cutting off other lower bidders, has always constituted a satisfaction of the debt [citations]. * * * [T]he mort-

gagee has voluntarily converted the debt into the property and has done so by taking the property in satisfaction of the debt.

\* \* \*

The theory of recovery by a mortgagee is indemnity. The risk insured against is an impairment of the mortgaged property which adversely affects the mortgagee's ability to resort to the property as a source for repayment. Where the debt has been satisfied in full subsequent to the fire, neither reason nor precedent suggest recovery on the policy by the mortgagee. \* \* \*

The rule is not harsh and it is eminently practical. None disputes that the mortgagee is entitled to recover only his debt. Any surplus value belongs to others, namely, the mortgagor or subsequent lienors." (28 N.Y.2d 332, 335-37, 321 N.Y.S.2d 862, 864-66, 270 N.E.2d 694, 696-97.)

In light of the above-cited authorities, we hold that Margolis' purchase at the foreclosure sale for the full amount of the balance due on the note secured by the mortgage extinguished the debt of Harris Bank as to Margolis and terminated his asserted interest in the insurance proceeds under the mortgage provision in question.

We also find no merit to Margolis' claim to reimbursement for the costs of providing guard service, board-up, and maintenance at the instant premises. That claim, which is based solely upon Margolis' motion submitted after the foreclosure, makes no reference to Margolis' original complaint and does not set forth a legal theory to support the claim. In denying the motion, the trial court stated in effect that there was nothing in the pleadings to support the claim for the alleged expenses.

The issues in a case are created by the pleadings and allegations, to which the proof must correspond (*City of Chicago v. Harris Trust & Savings Bank* (1977), 56 Ill. App. 3d 651, 371 N.E.2d 1182; *Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 300 N.E.2d 616), and a party cannot have relief under proof without allegations (*Gault v. Sideman* (1963), 42 Ill. App. 2d 96, 191 N.E.2d 436). In the present case, we believe the trial court correctly determined that Margolis' complaint contained no allegation upon which to base the claim to reimbursement. We note, in addition, that by virtue of the foreclosure sale, Margolis had no judgment against Harris Bank and that he filed no pleading requesting judgment against Partel.

■■ Even if such allegation had been made, the proof appears to have been to the contrary. The record indicates that on July 25, 1980, by agreement of the parties, the court appointed Stuart Kaiserman managing agent for the premises and gave him duties essentially equivalent to those of a court-appointed receiver. Kaiserman managed the premises until the date of the foreclosure sale and made certain expenditures, with court ap-

proval, aggregating to $19,638.59, for which the court gave Kaiserman a first lien on the premises superior to those of the mortgagees. Margolis does not contend that Kaiserman failed to fulfill his duties. Moreover, the invoices submitted by Margolis with the motion for reimbursement cover the period from November 12, 1980, to January 4, 1981, which is within the time of Kaiserman's management. Finally, it does not appear that Margolis ever requested the authority to make the expenditures in question. In the light thereof, we see no error in the denial of the motion.

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In his petition, plaintiff Mendel Margolis (Margolis) contends that (1) we misapplied the presumption of *Weiner v. Landry* (1970), 131 Ill. App. 2d 221, 264 N.E.2d 828—that one who bids at a foreclosure sale bids the fair market value of the property; (2) his contract rights were "overlooked"; and (3) we erroneously assumed that Stuart Kaiserman, the court-appointed managing agent, managed the premises until the date of the foreclosure sale.

Concerning the first contention, Margolis maintains that because his bid exactly equaled the combined amount of indebtedness due him, together with the amount of the senior liens, it should be presumed that his bid at the foreclosure sale was limited "to the combined amount of such indebtedness" and that "he would have reduced his bid accordingly by the amount the insurance proceeds would have reduced the indebtedness had they been available to apply to the debt prior to the sheriff's sale."

We view this contention to be without merit. Margolis asks the court to assume, in effect, that had he known the insurance proceeds could be applied to the mortgage debt, he would have reduced his bid by that amount. He does not, however, dispute the facts of the case; rather, it appears that he asks us to disregard them—in particular, the fact that the bid was made with the full knowledge of the condition of the premises and of the existence of the insurance proceeds which had been escrowed pending further court order.

As to Margolis' subsidiary point, that the court's application of the *Weiner* presumption gave Partel "a free $100,000 swing position," it appears that Margolis assumes the insurance proceeds had already been disbursed to Partel prior to the foreclosure sale. This, too, is contrary to the facts, inasmuch as those proceeds were not awarded until after the sale when they were applied to the deficiency judgment in favor of Partel against the mortgagor—defendant Harris Trust and Savings Bank. Margolis' assertion would, in essence, require us to assume, contrary to the record, that Partel was not a subordinate lienholder, for only by so doing would it be possible to regard the award of the proceeds as the "free use" of money.

■■ In summary, Margolis did not present facts sufficient to rebut the *Weiner* presumption, and because he makes no further reference to any in his petition, we adhere to our holding that the debt was satisfied by his bid on the property. As stated in *Whitestone Savings & Loan Association v. Allstate Insurance Co.* (1971), 28 N.Y.2d 332, 335, 270 N.E.2d 694, 696, he "voluntarily converted the debt into the property and [did] so by taking the property in satisfaction of the debt." To award Margolis any part of the insurance proceeds would amount to payment beyond the extinguishment of the debt, which the facts indicate was fully known to him at the time that he entered his bid.

■■ Margolis' second contention, that the court "overlooked" his contract rights to the insurance proceeds, is also without merit. He claims that there were fewer facts in support of the lienholder's claim to insurance proceeds in *Weiner* than in the present case. However, as we explained in the opinion, it appears that there was less in favor of Margolis' right to the insurance proceeds than was shown in *Weiner*, and thus the conclusion here—that Margolis was not entitled to them—is stronger than in *Weiner*.

Furthermore, the contract rights of Margolis have not been overlooked. Under clause 3.A. of the mortgage, insurance proceeds available pursuant to foreclosure are "payable to the owner of the certificate of sale [Margolis], owner of any deficiency [Partel] [or] any receiver." Since there was full satisfaction of Margolis' debt, the only contract rights to be protected in the present case were those of Partel. That indebtedness was satisfied in part through the award of the insurance proceeds against the deficiency judgment in favor of Partel.

■■ Finally, as to the contention that we erroneously assumed that Stuart Kaiserman managed the premises until the foreclosure sale, we note that Margolis presents no facts to the contrary. Instead, he maintains that we implied his "actions and expenditures were extraneous and unnecessary." Our opinion, however, carries no such implication. Rather, it is based upon the propositions (1) that Margolis had no judgment against Harris Bank since he in effect owned the property; (2) that he did not seek a

judgment against Partel; and (3) that he presents no facts from the record other than those set forth in the opinion. Thus, there is no implication that Margolis' expenditures were unnecessary; but, rather, that he failed to properly present his claim to the trial court in the form of a legal theory, and he does not show how the record might support any such theory. Margolis' argument is, therefore, beside the point.

The petition for rehearing is denied.

LORENZ and MEJDA, JJ., concur.