565 A.2d 382

**Barry D. ROLLINS, et al., Substituted Trustees**

v.

**Anthony BRAVOS, et al.**

**No. 241, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Nov. 6, 1989.

Certiorari Denied Feb. 9, 1990.

618

C. Lamar Garren (Anthony L. Meagher and Piper & Marbury, on the brief), Baltimore, for appellants.

Michael S. Botsaris (Neal S. Melnick and Weinstock, Stevan & Harris, P.A., on the brief), Baltimore, for appellee, Bravos.

Paul L. Cordish (Leonard M. Schwartz, and Cordish & Cordish, on the brief), Baltimore, for appellee, Goodman–Gable–Gould Co.

Argued before ROBERT M. BELL, WENNER and FISCHER, JJ.

ROBERT M. BELL, Judge.

At issue on this appeal from the judgment of the Circuit Court for Baltimore City are questions of entitlement. Barry D. Rollins and Raymond A. Brookhart, substituted trustees under a deed of trust (appellants) securing indebtedness owed by Anthony Bravos, one of the appellees, to Loyola Federal Savings and Loan Association (Loyola), maintain that the purchaser of fire damaged property at foreclosure sale is also entitled to receive insurance proceeds paid in respect of the damage. Bravos and an insurance adjustment company, Goodman–Gable–Gould–Co., the other appellee, argue, on the other hand, that the proceeds must be applied to extinguish Bravos' debt and that, since Loyola's

bid at foreclosure exceeded Bravos' debt to it, it was entitled to none of the proceeds. Goodman also maintains that it is entitled to have its fee for adjusting the fire insurance claim paid out of those proceeds. It is Bravos' position that he is entitled to retain that portion of the insurance proceeds remaining after the extinguishment of Loyola's mortgage debt, the payment of appellee Goodman's fee, and the payment of other creditors.

The trial judge accepted appellees' argument and ruled against appellants. Appellants have appealed. As will hereinafter become apparent, it provides appellants little solace.

Bravos borrowed $240,000 from Loyola for the purchase of property located at 921 N. Charles Street. To secure the indebtedness, he deeded the property to appellants in trust for Loyola. He also executed a Deed of Trust Note made payable to Loyola. Paragraph 6 of the deed of trust provides:

> That he will keep the improvements now existing or hereafter erected on the said premises insured as may be required from time to time by the holder of the note against loss by fire and other hazards, casualties, and contingencies in such amounts and for such periods as may be required by the holder of the note and will pay promptly, when due, any premium on such insurance, provisions for payment of which has not been made hereinbefore. All insurance shall be carried in companies approved by the holder of the note and the policies and renewals thereof shall be held by the holder of the note and have attached thereto loss payable clauses in favor of and in form acceptable to the holder of the note. In event of loss he will give immediate notice by mail to the holder of the note, who may make proof of loss if not made promptly by the party of the first part, and each insurance company concerned is hereby authorized and directed to make payment for such loss directly to the holder of the note instead of to the party of the first part and the holder of the note jointly, and insurance proceeds,

or any part thereof, may be applied by the holder of the note as [sic] its option either to the reduction of the indebtedness hereby secured or to the restoration or repair of the property damaged. *In event of foreclosure of this Deed of Trust or other transfer of title to the said premises in extinguishment of the indebtedness secured hereby, all right, title, and interest of the party of the first part in and to any insurance policies then in force shall pass to the purchaser or grantee.* (Emphasis added)

After Bravos paid only a small portion of the principal amount of the loan, he defaulted and foreclosure proceedings against the property were instituted.

Prior to the commencement of foreclosure proceedings, the property was damaged by a major fire. At the time that it was sold, the property was valued at approximately $125,000; it had not been repaired, thus, the lower value. Notwithstanding the value of the property, appellants sold the property at public auction to their principal, Loyola, at a purchase price of $265,000, an amount in excess of the principal amount of the Deed of Trust note.

Prior to the sale and after consultation with appellants, the auctioneer advised the prospective bidders concerning their right to receive insurance proceeds as follows:

During the time that you are the successful bidder and it's knocked down to you, the insurance money comes in prior to the auditor ratifying his auditors report you will not necessarily be [e]ntitled to the insurance claim in money, it will be applied to the debt. If, however, the auditor ratifies his report and the money has not come in, then you may have a right to claim the money.... It is obvious the place has been fire damaged, there is a claim for fire damage. The monies have not come in. If the money comes in during the time that the auditor has not ratified his report, his audit between 16–20 days approximately from sale date for ratification, then you will have the right to claim the money if he ratifies the auditor's sale, the auditor's report. If the money comes in during

the time he has not ratified it, the money will be applied to the debt. . . .

Questions from the bidders produced the following colloquy:

AUDIENCE: When does all that take place?

AUCTIONEER: We are still waiting for the insurance money. If the insurance money comes in between now and time that the sale has not been ratified by the auditor, you will not have a claim on the money, it will be applied to the debt. If the money comes in after the time that the sale has been ratified by the auditor you will have a right to the money.

AUDIENCE: Does that take place after the settlement.

AUCTIONEER: Let me explain something to you. You're not listening. (Let Mr. Rinaudo go a little further.) The sale must first must be ratified by the court under an order of starting within thirty days after the date we record it. After the sale has been ratified the auditor states his account which is a period of time from 15 to 20 days after the ratification of sale. After the 20 days, then the court auditor sends out his notices and then if there are no objections to the auditor's account then the sale that auditor's account is ratified. Then you are talking about a month to two months from now.

AUDIENCE: And if it comes in before that.

AUCTIONEER: It goes into the auditor's account as additional deposit.[1]

Subsequent to the sale, Loyola received the insurance proceeds in the amount of $188,040.25. Loyola did not apply the proceeds to reduce its mortgage debt, rather it asserted its entitlement to them as the purchaser at the foreclosure sale. In the meantime, Loyola sold the property it had purchased at foreclosure for $265,000 for $130,000.

---

**1.** The auctioneer responded to a question of how much money was involved by explaining that there was an IRS lien on the property which gave the IRS the right to redeem the property, within 120 days of the sale, for whatever the sale brought.

The initial report of sale was filed, and ratified, shortly after the foreclosure sale. When the insurance proceeds had been received, appellants filed an amended report of sale, acknowledging receipt of the proceeds and seeking to include them as part of the property sold to, and bought by, Loyola. That amended report was ratified by the court and appellees filed a timely objection.

Treating Bravos' objection as a motion for reconsideration, the court, by order dated April 4, 1988, referred the case to the General Equity Master for "hearing, report and recommendation as provided by Rule 2–541." Because appellee Goodman's motion alleged an equitable lien on any surplus remaining after the foreclosure sale, the court, by order of the same date, pursuant to Md.Rule W75, referred it to the auditor "for a determination of its validity and priority." To date, the auditor has not rendered a decision in the matter.

Bravos' objection challenged Loyola's entitlement to the insurance proceeds on two grounds: [2]

1. That [the] Deed of Trust allows Loyola Federal, upon foreclosure, to keep the insurance proceeds so long as the debt is extinguished. Loyola Federal has not extinguished the debt, however, they propose to keep the insurance proceeds and also to make a claim for the full amount of the debt plus interest, denying the Defendant of any benefit from the insurance he maintained on the premises. In the alternative, without considering a foreclosure, Loyola must use the insurance proceeds to reduce the mortgage debt or to restore the premises, either of which would have benefit the Defendant. Loyola has also refused to exercise those options.

and

2. That the instructions given by the auctioneer before the bidding commenced were confusing, misleading and

---

2. Goodman's objections essentially mirrored those of Bravos.

chilled the bidding process allowing Loyola to purchase the property at below market value.

The General Equity Master rejected both rationales and concluded that, inasmuch as Loyola was entitled to the insurance money, its amended Report of Sale should be accepted by the court. As to the latter, the Master found: "[s]ince Loyola Federal, the lender, purchased at the sale, the announcements by the auctioneer are not relevant" and, in any event, objection on that basis "should have been timely raised [within thirty days of] the original report of sale ..." pursuant to Md.Rule BR6.b.[3]

Concerning the former, the Master construed the last sentence of paragraph six of the Deed of Trust. She concluded that "[t]he phrase 'other transfer of title to the said premises in extinguishment of the indebtedness hereby' is a separate term from 'foreclosure.'" Therefore, since

[u]nder Maryland law foreclosure does not extinguish the debt, and the lender has a right to a deficiency judgment[,] Rule W75.b [,i]t would be incorrect to interpret the deed of trust language in a manner that modifies the word foreclosure with the phrase "in extinguishment of the indebtedness". Such an interpretation would be contrary to both the syntax of the deed of trust and existing Maryland law.

The trial court sustained exceptions, filed by both appellees, to the Master's Report and Recommendation. By its order, the court rescinded its prior approval of the amended report; ordered that the auditor apply the insurance proceeds as a reduction of Loyola's claim; and ordered that the

---

**3.** Md.Rule BR6.b.4. provides:
 4. Final Order.
 A final order of ratification of a sale shall be passed by the court after the time for responding to any order issued pursuant to subsection 2 of this section as expired, if the court is satisfied that the sale was fairly and properly made, and exceptions are not filed to the report of sale, or if exceptions are filed but overruled.
 Subsection 2 provides for ratification of a report of sale of real property "thirty days from the date of the notice unless cause to the contrary be shown."

auditor allow Goodman's claim in the amount of its fee for adjusting the insurance claim. It is from this order that appellants have appealed.[4]

### 1.

Appellants maintain that paragraph six of the deed of trust and, in particular, the last sentence of that paragraph, means that the insurance proceeds pass to the foreclosure sale purchaser as a part of the property sold at the foreclosure sale. To reach this result, appellants interpret "foreclosure" as being different from "other transfer of title to the said premises in extinguishment of the indebtedness secured hereby." Thus, limited to the situation applicable to them, appellants read the last sentence as follows, "in the event of foreclosure of this Deed of Trust, ... all right, title, and interest ... in and to any insurance policies then in force shall pass to the purchaser or grantee." Appellants thus rely upon the rule of the last antecedent, pursuant to which, modifying words, clauses, or phrases refer to the words, clauses, or phrases immediately preceding them and not to remote antecedents. *See In Re Mid-Atlantic Toyota Antitrust Litigation*, 525 F.Supp. 1265, 1286 (D.Md.1981); *Sullivan v. Dixon*, 280 Md. 444, 451, 373 A.2d 1245 (1977).[5] In any event, it is implicit in appellants'

---

**4.** Although interlocutory, the order is appealable. *See* Md.Cts. & Jud.Proc.Code Ann. § 12-303(3)(vi), which renders appealable an order "[d]etermining a question of right between the parties and directing an account to be stated on the principle of such determination." *See also Arundel Fed. Sav. & Loan Ass'n v. Lawrence*, 65 Md.App. 158, 161–62, 499 A.2d 1298 (1985); *Goodburn v. Stevens*, 1 Md.Ch. 420, 427 (1849).

**5.** In *In Re Mid–Atlantic Toyota, supra,* the District Court of Maryland was required to interpret a portion of a statute providing: "The term 'State Attorney General' means the chief legal officer of a State, or any other person authorized by State law to bring actions under Section 15c of this title". It determined that the qualifying phrase "authorized by State law to bring the action" modified only the phrase "any other person", and not "State Attorney General", because the former was the immediately preceding phrase and there had been no comma placed after it.

argument that the phrase, "insurance policies then in force", necessarily includes insurance proceeds.

 Rules of construction, including grammatical rules, while helpful, are not controlling as to the meaning of a particular phrase. *See Stanbalt Realty v. Commercial Credit Corp.*, 42 Md.App. 538, 543, 401 A.2d 1043 (1979). Where the context, *In Re Mid–Atlantic*, 525 F.Supp. at 1286, or the intention of the parties indicate that it is otherwise, an interpretation suggested by the rule of the last antecedent will be subordinated to the context or the intent of the parties. In short, "[t]he 'last antecedent' rule is merely an aid to construction and will not be adhered to where remote antecedent is clearly intended." 42 Md.App. at 544, 401 A.2d 1043.

 It is true, as appellants insist, that unless the proceeds of the sale are sufficient for that purpose, the mere foreclosure on a deed of trust and even sale of the property pursuant to the foreclosure proceedings, does not "extinguish" the debt, *see Mizen v. Thomas*, 156 Md. 313, 319, 144 A. 479 (1929); *Weismiller v. Bush*, 56 Md.App. 593, 598–99, 468 A.2d 646 (1983); in appropriate circumstances, a deficiency judgment may be entered in favor of the mortgagee. *Kronovet v. Lipchin*, 288 Md. 30, 57, 415 A.2d 1096 (1980);

---

The statute at issue in *Sullivan v. Dixon*, 280 Md. 444, 450, 373 A.2d 1245 (1977) provided:

> (b) *Corporate investment and ownership of property.*—Notwithstanding any other provision of law, a professional corporation may invest its funds in real estate, mortgages, stocks, bonds, or any other type of investment, and may own real or personal property necessary for the performance of a professional service.

The issue was whether the phrase "necessary for the performance of a professional service" modified the entire sentence or merely the phrase immediately preceding it. 280 Md. at 450–51, 373 A.2d 1245. The Court of Appeals held, "[i]n light of the generally recognized rule of statutory construction that a qualifying clause ordinarily is confined to the immediately preceding words or phrase—particularly in the absence of a comma before the qualifying clause—the disputed language obviously should be construed in the first instance as modifying only the phrase 'and may own real or personal property.'" *Id.*, at 451, 373 A.2d 1245.

*McKenna v. Sachse, Executor*, 225 Md. 595, 599–600, 171 A.2d 732 (1961); *Kline v. Chase Manhattan Bank*, 43 Md.App. 133, 143, 403 A.2d 395 (1979); *Garland v. Hill*, 28 Md.App. 622, 630, 346 A.2d 711, *aff'd*, 277 Md. 710, 357 A.2d 374 (1975). That this is so does not, however, render ineluctable the position taken by appellants. The validity of their position necessarily depends upon the extent to which it reflects the status of Maryland law.

█ As we have seen, the mortgaged property was substantially damaged by a hazard against which the mortgagor was required to and, indeed, did, insure, prior to default. Upon his default, foreclosure proceedings were instituted and a foreclosure sale held prior to the insurance proceeds being paid. Notwithstanding the fact that the property had a much lower value after the fire than it had before, the mortgagee purchased the property for an amount in excess of the debt owed by the mortgagor. Thus, the precise issue presented here is whether, under these facts, the purchaser at the foreclosure sale is entitled to receive, in addition to the premises bid upon, insurance proceeds due in respect of the damage to those premises. Put another way, the question is: were the insurance proceeds a part of the consideration for which the mortgagee bid at the foreclosure sale? This precise issue has not been decided by a Maryland court. Other jurisdictions have, however, and, for the most part, they have applied the "foreclosure after loss" principle. *See, e.g., Calvert Fire Insurance Company v. Environs Development Corp.*, 601 F.2d 851, 855–56 (5th Cir.1979); *United States v. Lititz Mutual Insurance Company*, 694 F.Supp. 159 (M.D.N.C. 1988); *Tech Land Development, Inc. v. South Carolina Insurance Company*, 57 N.C.App. 566, 291 S.E.2d 821, *cert. denied*, 306 N.C. 563, 294 S.E.2d 228 (1982); *Laurel National Bank v. Mutual Benefit Insurance Company*, 297 Pa.Super. 473, 444 A.2d 130 (1982); *Smith v. Stockton, Whatley, Davin & Company*, 487 So.2d 923 (Ala.Civ.App. 1985); *Nationwide Mutual Fire Insurance Company v. Wilborn*, 291 Ala. 193, 279 So.2d 460 (1973); *Imperial*

*Mortgage Corporation v. Travelers Indemnity Company of Rhode Island,* 43 Colo.App. 74, 599 P.2d 276 (1979).

The approach taken by these courts, which may be characterized as the majority view, *see Lititz Mutual Insurance Company,* 694 F.Supp. at 160; *5A J Appleman, Insurance Law and Practice,* § 3403 (1970, 1981 Supp.), stresses the sequence of events. Thus, where the insured premises are damaged before foreclosure proceedings have been instituted or, if after they have been instituted, prior to the sale being held, and the mortgagee purchases the property at the foreclosure sale, the mortgagee is permitted to retain the insurance proceeds pursuant to a mortgage clause requiring insurance, to the extent of any deficiency between the amount brought at foreclosure and the amount of the debt. The remainder of the proceeds is payable to the mortgagor. *See Wilborn,* 279 So.2d at 463; *Smith,* 487 So.2d at 925; *Calvert,* 601 F.2d at 856; *Tech Land Development,* 291 S.E.2d at 823. This is so because:

> The creditor's interest in the insurance proceeds is recognized as security for the payment of the debt. The insurance is an alternative source of payment and once the debt is paid by some other means any right to the insurance is thereby extinguished. Equity requires that subsequent events such as payment of the underlying debt not be ignored when a court distributes the insurance proceeds.

*Calvert,* 601 F.2d at 856.

Moreover, the mortgagee who bids on the property at the sale "is bound by its bid, [and] the debt has to that extent been satisfied and extinguished". *Calvert, supra.*

A case quite similar to the case before us is *Smith.* There, the mortgagor was obligated, under a clause virtually identical to paragraph six of the mortgage in this case, to maintain insurance on the mortgaged premises. Although foreclosure proceedings were instituted prior to the premises being damaged, the foreclosure sale was not held until afterwards. At the sale, the mortgagee bid the exact

amount of principal and interest then due, plus the expenses of foreclosure. Being the successful bidder, the mortgagee sought to recover and retain the insurance proceeds payable in respect of the damage to the premises and the trial court granted summary judgment in its favor.

The Court of Civil Appeals of Alabama reversed, rejecting an argument very similar to that made here, that the last sentence of the applicable mortgage paragraph, whereby the mortgagor assigned all of his "right, title and interest ... in and to the insurance policies then in force" to the mortgagee distinguished that case from *Wilborn*. The Court reasoned, quoting from *Wilborn:*

> A debt is as effectually paid whether by the voluntary act of the debtor, or by compulsory proceedings of any sort which have that legal effect. When so, all rights as a creditor immediately terminate....
>
> It is a fixed principle that when a mortgagee forecloses his mortgage, and at the sale the property brings, and he collects the full amount of his debt, he is no longer a creditor, but his debt is paid. This is so when he buys at the sale, with due authority, bidding the full amount of his debt. He is then the owner of the property, and not a creditor. There is in the former owner only a statutory right, which is not a property ownership. He has collected his debt as effectually as if another had bought the property and paid him the full amount as purchase money, or if the debtor had paid him in cash of his own accord....

487 So.2d at 926, quoting *Aetna Insurance Company v. Baldwin County Building and Loan Association*, 231 Ala. 102, 163 So. 604, 605–06 (1935).

As we have indicated, no Maryland case has decided this precise issue. It has been decided, however, that where a mortgage requires the mortgagor to insure the property against loss and the property is so insured when a loss occurs as to which the insurance applies, the proceeds of the policy of insurance must be applied to the extinguishment of the debt. *See Seidewitz v. Sun Life Insurance*

*Company of America,* 144 Md. 508, 514–515, 125 A. 78 (1924); *Rent–A–Car Company v. Fire Insurance Company,* 158 Md. 169, 177–78, 148 A. 252 (1929). *See also Heinz v. German Building Association,* 95 Md. 160, 169, 51 A. 951 (1902), in which the Court stated:

> In *Smith v. Packard,* 19 N.H. 575, it is said that if a policy of insurance upon mortgaged property be assigned to the mortgagee as collateral security any sum of money, to which, as such assignee, he may become entitled by the destruction of the insured property before the foreclosure of the mortgage, is applicable to the payment of the debt and as to the remainder he is the trustee of the mortgagor.

■ Appellants counter with the argument that existing law is that the purchaser at the foreclosure sale is entitled to receive insurance proceeds. Rather than support that argument with citation to cases which stand for the proposition it asserts, after analyzing the rationale underlying the cases cited by appellees, they seek to demonstrate that the fact patterns in those cases are different from that in the case *sub judice.* Thus, appellants note that the rule enunciated by the cases cited by appellees is designed to prevent double recovery by the mortgagee and proceeds on the theory that, at a foreclosure sale, a bid in the amount of the debt extinguishes the debt and, consequently, the mortgagee's entitlement to insurance proceeds. They offer two bases upon which to distinguish this case from *Calvert Fire,* the case upon which they primarily focus, and the other cases relied upon by appellees. First, they point out, none of the cases involved a mortgage provision similar to the last sentence of paragraph six of the deed of trust—"In the event of foreclosure ... all right, title and interest ... in and to insurance policies then in force shall pass to the purchaser." Second, they maintain that there is no chance of a double recovery in this case, notwithstanding that Loyola bid more than the mortgage debt at the foreclosure sale. They reason that what Loyola bought was appraised for only $125,000, thus, the only explanation for the bid was

that it was designed to acquire the insurance proceeds as well.

As we have already seen, *Smith, supra,* involved a mortgage with the identical language to that relied upon by appellants here. Notwithstanding that language, the Court had no difficulty determining that the principal of "foreclosure after loss" applied; in the words of the court, "After the loss, there was no more insurance on the property so lost under the *Baldwin* case. Hence, there was no 'insurance policy then in force' as to the lost mortgage property which could transfer under paragraph 7 of the mortgage." Id., 487 So.2d at 927.

Appellants' alternative rationale is equally unavailing. First, the position is inconsistent with the advice the auctioneer gave concerning insurance proceeds prior to the foreclosure sale. That advice, which was given after consultation with appellants, essentially mirrored the "foreclosure after loss" principal. Second, and just as important, appellants were aware, prior to the foreclosure sale, that there was an insurance claim outstanding in respect of damage to the mortgaged property. To the extent that Loyola was operating under a misconception as to the proper disposition of those insurance proceeds, it must bear the loss. *See Partel, Inc. v. Harris Trust & Savings Bank,* 106 Ill.App.3d 962, 63 Ill.Dec. 303, 304, 437 N.E.2d 1225, 1226, *cert. denied,* 91 Ill.2d 572 (1982).

In that case, prior to initiation of foreclosure proceedings, property which was subject to three mortgages had been damaged in a fire. At the time of the foreclosure sale, $51,573 in fire insurance proceeds were available, in escrow. One of the mortgagees was the successful bidder at the foreclosure sale. He bid the entire amount of his debt, plus the amount of a superior mortgage. A deficiency judgment was entered in favor of the third mortgagee. The successful bidder's motion for the turnover of the insurance proceeds was denied, the court determining that, by bidding the entire amount of his adjudicated lien, he had extinguished his debt. It reasoned:

... As Margolis does not argue to the contrary, it seems clear that his bid was made with the full knowledge of the condition of the premises, of the existence of the insurance proceeds, and of the trial court's order placing the proceeds in escrow to be disbursed pursuant to further order. There also is no indication that Margolis, ... placed insurance on the property, paid the premiums as an advance to Harris Bank, or sought to receive credit at the time of the sale. Moreover, at the foreclosure sale, Margolis ... bid his entire adjudicated indebtedness, and Margolis refers us to no part of the record which would suggest that he bid anything other than the fair cash value of the property and thus might be entitled to a deficiency judgment.

63 Ill.Dec. at 305, 437 N.E.2d at 1227.

With the exception of the lack of evidence as to the fair cash value of the property, this situation mirrors the facts *sub judice.* We do not deem the fact that the record in this case reflects that the fair value of the property was less than the amount of the successful bid is a significant difference—the property was advertised for sale "as is." In any event, what the Court said in its Supplemental Opinion Upon Denial Of The Petition For Rehearing applies equally as well, if not even better, to this case:

We view this contention [6] to be without merit. Margolis asks the court to assume, in effect, that had he known the insurance proceeds could be applied to the mortgage debt, he would have reduced his bid by that amount. He does not, however, dispute the facts of the case; rather, it appears that he asks us to disregard them—in particular, the fact that the bid was made with the full knowledge of

---

**6.** The contention was that, because the mortgagee's bid "exactly equaled the combined amount of indebtedness due him, together with the amount of the senior liens, it should be presumed that his bid at the foreclosure sale was limited 'to the combined amount of such indebtedness' and that 'he would have reduced his bid accordingly by the amount the insurance proceeds would have reduced the indebtedness had they been available to apply to the debt prior to the sheriff's sale.'" 63 Ill.Dec. at 306, 437 N.E.2d at 1228.

the condition of the premises and of the existence of the insurance proceeds which had been escrowed pending further court order.

63 Ill.Dec. at 306–307, 437 N.E.2d at 1228–29.

■ Appellants also maintain that appellees did not timely object to the sale because their objections were lodged long after the passage of thirty days from the original report of sale. *See* Md.Rule BR6.b.2. That contention is utterly without merit. Appellees were permitted to view Loyola's bid, in an amount in excess of the amount it was owed, as having extinguished Bravos' indebtedness to Loyola and, consequently, they could assume that Loyola was not entitled to any portion of insurance proceeds, which, at the time of the sale, were well known to all parties to be a possible resource. It was only after they had been advised that this was erroneous that they had a viable objection and they made it in a timely manner.

2.

■ On April 4, 1988, as we have seen, the court issued two referral orders. One referred the case to the General Equity Master for hearing, report and recommendation, while the other referred appellee Goodman's claim to the auditor for a determination of its validity and priority. The hearing before the General Equity Master occurred on May 3, 1988 and concerned only the claim of appellee Bravos. Appellee Goodman was permitted to "intervene" in the "proceeding", however, by order dated May 10, 1988. Despite that intervention, the General Equity Master's report and recommendation never addressed, probably because it was not raised, the issue raised by appellee Goodman.

From the foregoing, appellants maintain that the court's judgment, as it pertains to appellee Goodman, is premature. It may very well be; however, given our resolution of the entitlement issue, we fail to see what standing appellants have to raise it. Once it has been determined that appellants have no interest in the insurance proceeds, how they

are divided, as between appellees and any other of Bravos' creditors, is a matter of concern to them, not of appellants.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.