# Illinois Official Reports

## Appellate Court

---

### *Old Second National Bank v. Jafry*, 2016 IL App (2d) 150825

---

| | |
|---|---|
| Appellate Court Caption | OLD SECOND NATIONAL BANK, Plaintiff-Appellee, v. SYED N. JAFRY and ASMAT Z. JAFRY, Defendants-Appellants. |
| District & No. | Second District<br>Docket No. 2-15-0825 |
| Filed | June 28, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-CH-5000; the Hon. Robert G. Gibson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael A. Grill, Christopher W. Carmichael, and Elaina L. Emerick, all of Holland & Knight LLP, of Chicago, for appellants.<br><br>Craig C. Westfall and Donna Becker, both of Nigro, Westfall & Gryska, P.C., of Glendale Heights, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justice Hudson concurred in the judgment and opinion.<br>Presiding Justice Schostok dissented, with opinion. |

**OPINION**

¶ 1      Defendants, Syed and Asmat Jafry, were guarantors on a real estate loan extended by plaintiff, Old Second National Bank (the Bank). After a loan default, the Bank obtained a judgment of foreclosure on the property. At the sheriff's sale, the Bank purchased the property for $900,000. The trial court approved the sale and entered a deficiency judgment of $577,876. Four months later, the Bank sold the property for $1,320,000. The Bank thereafter initiated enforcement proceedings against defendants, seeking the full deficiency judgment of $577,876, plus interest. Defendants responded with a petition for setoff, arguing that allowing the Bank to obtain a substantial profit from the resale of the property as well as the full deficiency judgment would constitute an improper double recovery. The trial court disagreed and dismissed defendants' petition. We hold that, when a mortgagee obtains a deficiency judgment against the mortgagor in a foreclosure action, purchases the property at a judicial sale, and then resells it to a third party for an amount that exceeds the price paid at the judicial sale, the mortgagor is not entitled to a setoff in the mortgagee's enforcement proceedings to recover the deficiency judgment, because the foreclosure terminates the mortgagor-mortgagee relationship. If the mortgagor fears that the mortgagee will obtain a windfall in purchasing the property at a judicial sale, the mortgagor may attempt to sell the property himself before foreclosure or challenge the confirmation of sale under the Mortgage Foreclosure Law (Foreclosure Law). See 735 ILCS 5/15-1508(b) (West 2014). Here, defendants neither attempted to sell the property nor appealed their unsuccessful challenge to the confirmation of sale. We affirm.

¶ 2                       I. BACKGROUND

¶ 3      On June 19, 2013, the trial court entered a judgment of foreclosure and sale with respect to the property at 720 Crescent Street in Wheaton. The judgment reflected an outstanding loan balance of $1,362,329. Defendants were the guarantors on the loan. On June 19, 2014, the Du Page County sheriff's office conducted a public sale of the property. The Bank was the only bidder, purchasing the property for $900,000.

¶ 4      Defendants contested confirmation of the judicial sale, on the basis that the Bank's bid was unconscionably low. Defendants submitted an appraisal, dated July 11, 2014, which valued the property at $1,280,000. The Bank submitted two appraisals that valued the property between $1,000,000 and $1,060,000.

¶ 5      On August 26, 2014, the trial court entered an order approving the sale at $900,000 and entering a deficiency judgment of $577,876 against defendants. Defendants did not appeal from that order. Four months later, on December 15, 2014, the Bank sold the property to a third party for $1,320,000.

¶ 6      On February 17, 2015, the Bank initiated enforcement proceedings against defendants, seeking the full deficiency judgment of $577,876, plus interest. On April 15, 2015, defendants filed a petition for equitable setoff, requesting a $420,000 reduction in the deficiency judgment, to reflect the difference between the Bank's winning bid at the judicial sale in June 2014 and the resale price in December 2014.

¶ 7      On May 19, 2015, the Bank moved to dismiss defendants' petition pursuant to section 2-615 of the Code of Civil Procedure (the Code) (725 ILCS 5/2-615 (West 2014)). On July 15,

2015, the trial court dismissed defendants' petition, explaining that, in the foreclosure context, a claim for setoff is unavailable, because (1) it could cause foreclosure proceedings to drag on indefinitely and (2) in some cases it would be impossible for the trial court to determine the setoff amount. Defendants thereafter filed a timely notice of appeal.

¶ 8                                    II. ANALYSIS

¶ 9        Defendants contend that the trial court erred in denying them a setoff following the foreclosure. They argue that Illinois has a longstanding policy against double recoveries and that this policy should apply equally to all enforcement actions, including those in the foreclosure context. They insist that a judgment debtor should be allowed to seek a setoff when the judgment creditor has recovered all or part of a loan deficiency before the creditor initiates proceedings to enforce a deficiency judgment.

¶ 10       A motion to dismiss filed under section 2-615 attacks the legal sufficiency of a pleading. *Vernon v. Schuster*, 179 Ill. 2d 338, 344 (1997). The section 2-615 motion cannot raise affirmative factual defenses, but must allege only defects on the face of the pleading. *Id.* When considering a section 2-615 motion, the trial court accepts as true all well-pleaded facts and all reasonable inferences that reasonably flow therefrom. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 320 (2008). A cause of action may not be dismissed on the pleadings unless it is clear that no set of facts can be proved that will entitle the claimant to relief. *Vernon*, 179 Ill. 2d at 344. The standard of review on appeal from an order granting a motion to dismiss for failure to state a cause of action is *de novo*. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429-30 (2006).

¶ 11       Although the issue presented is one of first impression in this state, our analysis is guided by long-recognized principles here and elsewhere. Those principles include that a purchaser at a foreclosure sale takes under the decree and not under the mortgage or trust deed, and therefore the purchaser's rights are not dependent on any privity of contract between the purchaser and the mortgagor. *Powell v. Voight*, 348 Ill. 605, 609 (1932). As such, where a mortgagee by purchase at a foreclosure sale acquires a certificate of purchase, a new relationship is thereby created, which is in no way dependent on, or influenced by, the prior contract between the mortgagee and the mortgagor. *Johnson v. Zahn*, 380 Ill. 320, 325-26 (1942). In other words, the foreclosure ends the mortgagor-mortgagee relationship and "vests in the purchaser at the foreclosure sale all the rights, title, and interest of [both the mortgagor and] the mortgagee." 59A C.J.S. *Mortgages* § 1208 (2016).

¶ 12       Defendants reject the long-held principle that the foreclosure exhausted all of their rights in the property. They claim that, after the foreclosure, they retained a right of setoff or equitable setoff. Neither concept applies.

¶ 13       Setoff refers to "a defendant's request for a reduction of the damage award because a third party has already compensated the plaintiff for the same injury." (Emphasis omitted.) *Thornton v. Garcini*, 237 Ill. 2d 100, 113 (2010). The right to setoff is derived from either a contractual right or equity. *Brannen v. Seifert*, 2013 IL App (1st) 122067, ¶ 95. Without a contractual right, there is no inherent right to setoff in equity; rather, equitable setoff was conceived as a limited remedy. *Id.* A right to setoff in equity arises only if the indebtedness is certain and already reduced to a precise figure without a need for the intervention of a court or jury to estimate it. *Id.*

¶ 14     Courts have approved an award of setoff where the defendant's insurance company made payments on his behalf (*Klier v. Siegel*, 200 Ill. App. 3d 121, 128 (1990)) or where a co-defendant made payments for the same underlying injury (*Thornton*, 237 Ill. 2d at 113-14; *Star Charters v. Figueroa*, 192 Ill. 2d 47, 48 (2000)). However, we are aware of no case, and defendants cite none, where a defendant has been entitled to a setoff or equitable setoff because a third party, who had no relationship with the defendant, made a payment to the plaintiff.

¶ 15     At oral argument, defendants acknowledged that this case does not fall precisely under the traditional definitions of setoff or equitable setoff, but they asked us to create a new type of setoff based on a court's inherent equitable powers. What defendants propose is a broad and flawed expansion of the setoff doctrine that is not equitable at all. For example, if a third party had purchased the property at the sheriff's sale, defendants would have no recourse against that third party to reduce the deficiency judgment held by the Bank. See *Johnson*, 380 Ill. at 325-26. Yet, defendants insist that, because it was the Bank holding their mortgage that also bought the property, the Bank should be held to a different standard. The same argument was considered and rejected as contrary to "logic, justice, and common sense" in *Kentucky Joint Stock Land Bank of Lexington v. Farmers Exchange Bank of Millersburg*, 119 S.W.2d 873, 877 (Ky. Ct. App. 1938).

¶ 16     In *Kentucky Joint Stock*, the debtor borrowed $20,000 from a bank to purchase land. The debtor failed to timely repay the loan, and the bank foreclosed on the property. At a court-ordered sale, the bank purchased the property for $13,071, which was approximately 50% above the appraised value. The bank sought a deficiency judgment, which was denied. *Id*. at 875-77.

¶ 17     The bank appealed, but the debtor sought to dismiss the appeal on the grounds that the bank had since sold the property for an amount that exceeded its purchase price at the court-ordered sale and was sufficient to extinguish the deficiency judgment. The debtor asserted that, even after the property was sold at the court-ordered sale, the property continued as the primary fund for payment of the debt. The debtor claimed that the property remained as a lien for the debt until it was sold to a stranger for the debt. *Id.* at 877.

¶ 18     The reviewing court rejected this argument, holding that, upon completion of the court-ordered sale, under the law as well as "logic, justice, and common sense," the purchaser obtained an unencumbered title to the property, regardless of whether that purchaser was the holder of the secured debt or a stranger to the debt. The reviewing court found that, "without some agreement or conduct on [the bank's] part creating a different result," it did not matter whether the purchaser was the plaintiff in the enforcement proceedings or a stranger to such proceedings. Accordingly, the reviewing court denied the debtor's motion to dismiss. *Id.*

¶ 19     *Kentucky Joint Stock* was decided in a foreign jurisdiction nearly 80 years ago, but its rationale remains compelling and consistent with the setoff doctrine in Illinois today. Other than sympathy for the judgment debtor, there is no reason to treat a bank differently than a third party who purchases the property at the court-ordered sale. To hold otherwise would contravene the long-recognized principles that a purchaser at a foreclosure sale obtains all rights to the property (59A C.J.S *Mortgages* § 1208 (2016)) and that the foreclosure sale terminates the relationship between the mortgagor and the mortgagee (*Johnson*, 380 Ill. at 325-26).

¶ 20     Defendants' breach of contract was unrelated to the compensation the Bank received from the third-party purchaser of the property. The foreclosure action terminated the mortgagor-

- 4 -

mortgagee relationship, and the Bank obtained an unencumbered right of ownership at the judicial sale, which conferred the right to sell it to a third party. The Bank is not receiving an improper double recovery for the same injury (see *Klier*, 200 Ill. App. 3d at 125-27 (Illinois has a strong public policy against a plaintiff's double recovery for the same injury)), and the deficiency judgment represents a single satisfaction of defendants' debt (see *Partel, Inc. v. Harris Trust & Savings Bank*, 106 Ill. App. 3d 962, 964-66 (1982)), regardless of how the value of the property changed between the dates of the two sales.

¶ 21    Defendants frame the issue as one of equity, but their setoff claim is effectively a request to reopen the judgment and modify the deficiency based on the resale price. Reopening the judgment under the guise of awarding a setoff would undermine the finality of the judicial sale and require a full evidentiary hearing on the amount and reasonableness of the mortgagee's expenses for maintaining and improving the property and the fluctuations in the real estate market between the confirmation of the judicial sale and the sale of the property to a third party. The need for such an estimation simply does not fit the parameters of an equitable setoff, as the reduction in the indebtedness could not be ascertained without the intervention of a court. See *Brannen*, 2013 IL App (1st) 122067, ¶ 95. Indeed, the dissent would remand this case for additional proceedings to determine the costs incurred by the Bank in reselling the property.

¶ 22    Moreover, a truly equitable solution would run both ways. No one disputes that, when a mortgagee resells a property for less than it paid at the judicial sale, it may not recover the difference in enforcement proceedings against the mortgagor. This is so because the mortgagor's interest in the property is extinguished by the judicial sale and because the mortgagee's interest following that sale confers the right to exclusive possession, which could result in improvement or deterioration of the property. When the mortgagor-mortgagee relationship ends with the judicial sale, the debtor loses any input over how the property will be maintained, and thus he faces no liability for potential losses incurred by the lender. The debtor is neither liable for future losses nor entitled to future gains. Certainly, defendants are not advocating a rule whereby a judgment creditor could recover in enforcement proceedings an amount exceeding the deficiency judgment.

¶ 23    Also, defendants' proposed new rule might lead to problematic and unintended consequences. First, they argue that, unlike a "stranger to a debt," a lender is in a position to manipulate a sheriff's sale to its benefit, because the lender sets the opening bid and routinely is the only bidder, resulting in maximization of the deficiency judgment. On the contrary, the possibility of a setoff in enforcement proceedings might give the lender a perverse incentive to not bid on the property at all, resulting in a lower purchase price and a greater deficiency.

¶ 24    Second, defendants' proposed expansion of the setoff doctrine might cause the real estate market to stagnate unnecessarily. A lender who chooses to purchase the mortgaged property by judicial sale would be inclined to avoid a setoff by retaining ownership, to the extent that such retention is lawful, until the deficiency-judgment enforcement proceedings concluded. Third, defendants advocate a rule that could expand to cover all secured transactions besides mortgages.

¶ 25    The underlying sentiment of defendants' argument is that the Bank should not be allowed to abuse its power as an opportunistic lender. However, mortgagors in defendants' position can take steps to prevent this type of perceived profiteering by mortgagees.

¶ 26    First, defendants could have attempted to sell the property themselves, reaping an apparently steep appreciation in its value, before the foreclosure proceedings deprived them of the opportunity to do so. Defendants did not take advantage of the changing market to limit their exposure on the loan, and their failure to act allowed the Bank to obtain a $577,876 deficiency judgment and a $420,000 gain on the resale. The Bank's transactions were independent of one another and, though favorable to the Bank, do not constitute a double recovery.

¶ 27    Defendants do not allege that the Bank interfered with their right to dispose of the property, and they offer no explanation for declining to do so. Defendants contend that their type of setoff claim following a foreclosure is "rare," because their situation is rare. Such rarity can be explained by the fact that a similarly situated mortgagor would be expected to recognize and act on his position by selling the property before the mortgagee foreclosed on the property, bought it at the judicial sale, and resold it for more than it paid. The Bank exercised its contractual rights when defendants did not.

¶ 28    Second, section 15-1508(b) of the Foreclosure Law safeguards debtors, stating that the judicial sale shall be confirmed "[u]nless the court finds that (i) a notice required in accordance with subsection (c) of section 15-1507 was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently, or (iv) justice was otherwise not done." 735 ILCS 5/15-1508(b) (West 2014). If a lender's bid is unconscionably low, section 15-1508(b) authorizes the trial court to invalidate the sale.

¶ 29    Even if we determined that it was appropriate to treat lenders and third parties differently in the context of the judicial sale of real estate, defendants still would not be entitled to equitable relief in this case. Defendants, in fact, availed themselves of the opportunity to challenge the confirmation of sale by arguing that the Bank's bid was unconscionable and that " 'justice was otherwise not done.' " *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 18 (quoting 735 ILCS 5/15-1508(b) (West 2014)). Defendants contested the confirmation of sale by presenting an appraisal that the property was worth $380,000 more than the Bank's bid, but they did not appeal the trial court's order that confirmed the sale. Defendants' failure to appeal precludes us from granting them equitable relief. See *In re Estate of Mondfrans*, 2014 IL App (2d) 130205, ¶ 26 (party not entitled to equitable relief where he was not diligent in preserving his rights).

¶ 30    Perhaps the outcome would have been different if the Bank had bid on the property with an agreement for its resale to a third party already in place or otherwise engaged in nefarious activity to thwart defendants' exercise of their rights. See *Kentucky Joint Stock*, 119 S.W.2d at 877. However, defendants do not allege any such misconduct by the Bank. Under the undisputed circumstances of this case, we conclude that the trial court did not err in granting the Bank's motion to dismiss defendants' petition for a setoff.

¶ 31                                    III. CONCLUSION

¶ 32    We hold that, when a mortgagee obtains a deficiency judgment against the mortgagor in a foreclosure action, purchases the property at a judicial sale, and then resells it to a third party for an amount that exceeds the price paid at the judicial sale, the mortgagor is not entitled to a setoff in the mortgagee's enforcement proceedings to recover the deficiency judgment because the foreclosure terminates the mortgagor-mortgagee relationship. Thus, the trial court did not err in dismissing defendants' petition for a setoff.

¶ 33    For the reasons stated, the judgment of the circuit court of Du Page County is affirmed.

¶ 34    Affirmed.

¶ 35    PRESIDING JUSTICE SCHOSTOK, dissenting.

¶ 36    The paramount consideration of this court is always to ensure that justice is done. *Lambert v. Downers Grove Fire Department Pension Board*, 2013 IL App (2d) 110824, ¶ 39; see also *McCloud v. Rodriguez*, 304 Ill. App. 3d 652, 658 (1999) (court's duty is to ensure that justice is rendered to every party). Because I do not believe that the decision in this case is just, I must respectfully dissent.

¶ 37    The majority's reliance on *Kentucky Joint Stock* is misplaced, as there is indeed a reason to treat a bank differently than a third party who purchases the property at the court-ordered sale. Unlike a "stranger to the debt," a bank is in a position to manipulate the sheriff's sale to its benefit. The bank is the one that sets the opening bid at the sheriff's sale, is typically the only one that bids at the sheriff's sale, and is in a position to control the size of the deficiency judgment. Although debtors can contest the confirmation of the sale, they have a very high burden to overcome to actually have the sale set aside. That is because, once a foreclosed property has been sold at a sheriff's sale, the trial court *must* enter an order confirming the sale unless it finds that: " '(i) proper notice of the sale was not given; (ii) the terms of the sale were unconscionable; (iii) the sale was conducted fraudulently; or (iv) justice was otherwise not done.' " *Wells Fargo Bank, N.A.*, 2013 IL 115469, ¶ 18 (quoting 735 ILCS 5/15-1508(b) (West 2014)). Indeed, the trial court confirmed the sale here even though the Bank's purchase price was $380,000 less than what the defendants' appraiser said the property was worth and $100,000 to $160,000 less than what the Bank's own appraisers said the property was worth.

¶ 38    Based on a bank's ability to manipulate the sheriff's sale to its benefit, there are several reasons why a debtor should be entitled to an equitable setoff against a deficiency judgment when his creditor is able to resell the property shortly after purchasing it at the sheriff's sale. First, Illinois has a strong public policy against a plaintiff's double recovery for the same injury. *Klier*, 200 Ill. App. 3d at 125-27. The purpose of awarding compensatory damages is to make the injured party whole and restore the party to the position it was in before the loss. *Harris v. Peters*, 274 Ill. App. 3d 206, 207 (1995). The double-recovery rule is derived primarily from principles of unjust enrichment. *US Airways, Inc. v. McCutchen*, 569 U.S. ___, ___, 133 S. Ct. 1537, 1545 (2013). Compensatory damages are not intended to bestow a windfall on the plaintiff or to punish the defendant. *Mulligan v. QVC, Inc.*, 382 Ill. App. 3d 620, 630 (1998).

¶ 39    Second, Illinois courts have found that a mortgagee is entitled to a single satisfaction of his debt and no more. See *Partel, Inc. v. Harris Trust & Savings Bank*, 106 Ill. App. 3d 962, 964-66 (1982) (affirming the trial court's application of insurance proceeds to reduce the deficiency judgment amount because the mortgagee is entitled to recover only his debt); *Skach v. Lyndon*, 16 Ill. App. 3d 610, 614 (1973) (in *dicta*, court found that a creditor in foreclosure action was limited to one satisfaction); *In re Linane*, 291 B.R. 457, 461 (N.D. Ill. Bankr. 2003) (in *dicta*, court found that a creditor has "the right in any foreclosure proceedings to proceed against the property and, in addition to secure a money judgment for any deficiency, provided the creditor receives only one satisfaction" (internal quotation marks omitted)). Although some

of the above cases made the relevant findings in *dicta*, those findings may still be considered as persuasive authority. *Ko v. Eljer Industries, Inc.*, 287 Ill. App. 3d 35, 41 (1997).

¶ 40    Third, finding that a debtor is entitled to a setoff is consistent with the principle, enunciated by our supreme court, that the duty to mitigate one's damages applies to virtually all cases in which a money judgment or award is sought. *Kelly v. Chicago Park District*, 409 Ill. 91, 98 (1951).

¶ 41    Fourth, finding that setoff relief is potentially available is consistent with recent rule changes enacted by our supreme court that are "designed to force lenders to become more active in the loss-mitigation aspect of foreclosure litigation." Adam W. Lasker, *New Supreme Court Rules Promote Foreclosure Mediation*, 101 Ill. B.J. 170, 171 (2013). Although the new rules pertain to actions mortgagees should take prior to initiating foreclosure proceedings, the underlying policy considerations expressed therein by the supreme court are still relevant to this case.

¶ 42    Based on the above principles, it is apparent that a debtor in a foreclosure action may seek a setoff against his creditor in the enforcement proceedings of a deficiency judgment if the creditor has been able to resell the property prior to the commencement of the enforcement proceedings and has been able to recover some of its losses. This holding is consistent with the principle that a mortgagee is entitled to only one satisfaction of his debt. To hold otherwise would offend public policy, as it would allow the mortgagee, who has been able to mitigate some of his losses, a double recovery against a debtor who has just lost his property to foreclosure. As such, I would find that the trial court erred in dismissing the defendants' petition for setoff relief.

¶ 43    In so finding, I would reject the Bank's argument that the defendants' pleadings were insufficient because the injury incurred due to the defendants' breach of contract was unrelated to the compensation the Bank received from a third party. The defendants alleged that they were indebted to the Bank due to a mortgage foreclosure. The defendants further alleged that the Bank had already been partially compensated for its losses when it was able to resell the property for a substantial profit. The fact that the Bank was able to recover some of its losses from a third party without any assistance from the defendants is not a basis to deny a setoff. See *Eberle v. Brenner*, 153 Ill. App. 3d 700, 702 (1987) (a plaintiff who has recovered for his damages should have no basis to complain because a defendant benefitted from a setoff). Accordingly, the defendants' allegations were sufficient to inform the Bank of the basis on which they were seeking an equitable setoff.

¶ 44    Also without merit is the Bank's contention that granting a debtor a setoff under the circumstances of this case would be inappropriate because it would (1) diminish the finality of judicial sales, (2) lengthen foreclosure litigation, (3) deprive the plaintiff of its property and grant new property rights to the defendants, and (4) lead to an unmanageable increase in litigation.

¶ 45    This case has nothing to do with the finality of a judicial sale or depriving the Bank of any of its ownership rights. Following the sheriff's sale, the Bank had a 100% ownership interest in the property and could do whatever it wanted with it. See 59A C.J.S. *Mortgages* § 1208 (2016). However, once the Bank sold the property for over $400,000 more than the purchase price it paid at the sheriff's sale, the issue became, could it still seek the full deficiency judgment without any setoff? For the reasons discussed above, I believe that it could not.

¶ 46 The Bank's argument that granting the defendants setoff relief against the deficiency judgment will lengthen foreclosure litigation is contradicted by the facts of this case. Here, the Bank had already resold the property by the time it initiated proceedings to enforce the deficiency judgment. Thus, the trial court could address the defendants' petition for setoff in a timely fashion.

¶ 47 Moreover, the Bank's concern that potentially allowing a debtor a setoff against a deficiency judgment will lead to an "unmanageable increase in litigation" is unfounded. To give rise to a right of setoff in equity, the indebtedness must be certain and already reduced to a precise figure without a need for the intervention of a court to estimate it. *Brannen*, 2013 IL App (1st) 122067, ¶ 95. Based on this high threshold to obtain setoff relief, few defendants in foreclosure actions will actually be able to successfully petition for such relief. Indeed, the applicable case law suggests that it is a rare occurrence when a mortgagee is able to resell a property for a substantial profit prior to initiating enforcement proceedings to collect a deficiency judgment. As the facts of this case reflect a rare occurrence, it is unlikely that allowing a setoff in this case will lead to an "unmanageable increase in litigation."

¶ 48 Finally, also without merit is the Bank's argument that the relief the defendants are requesting is not really equitable, because if the situation were reversed and it had sold the property for less than the price it had paid at the sheriff's sale, it could not seek a higher deficiency judgment against the defendants. Although the hypothetical situation the Bank posits is correct, it does not mean that the defendants are not potentially entitled to equitable relief. "Equity" denotes the spirit of fairness, justness, and right dealing that would regulate one's relationship with other members of society. *Hedrick v. Bathon*, 319 Ill. App. 3d 599, 608 (2001). As noted earlier, at a judicial sale, the creditor is the one who gets to set the opening bid and is typically the only one who makes a bid. If the creditor bids too high and cannot resell the property for a higher price, it is not inequitable to hold its failure to make an appropriate bid against it. Conversely, if the creditor is able to recoup a substantial portion of its losses before seeking to enforce a deficiency judgment, for the reasons discussed above, it is equitable for the debtor to receive a setoff against that deficiency judgment.

¶ 49 For the reasons stated, I would reverse the judgment of the circuit court of Du Page County and remand for additional proceedings to determine the costs incurred by the Bank in reselling the property.