EDWARD W. SULLIVAN ET UX. *v.*
WILLIAM E. DIXON, P.A.

[No. 132, September Term, 1976.]

*Decided June 8, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Henry L. Conway, Jr.*, for appellants.

*Robert W. Warfield* for appellee.

DIGGES, J., delivered the opinion of the Court.

The case before us involves the enforceability of a real estate contract which is challenged on grounds that title to the property is tainted by a prior fraudulent conveyance, and that the seller, a professional service corporation, possesses no power to convey the land. Concluding that the buyer's refusal to comply with the agreement was legally unwarranted, we shall affirm the judgment of the chancellor which granted specific performance to the seller.

The disputed contract was executed in the summer of 1975; however, in view of the aforementioned contentions, we must relate several earlier incidents affecting the property which is the subject of the present action — Lot 9, Bodkin Plains, Anne Arundel County, Maryland. In February 1973, respondent William E. Dixon, P.A., a professional corporation formed by its namesake for the purpose of practicing law, made a second mortgage loan of $16,500 to F.A., Inc., secured by this property. The

uncontradicted evidence discloses that F.A., Inc., a corporation formed for the purpose of developing a number of lots which it owned in Bodkin Plains, commenced ·construction of a residence on one of them, Lot 9, but was unable to complete the building when it encountered financial difficulties. As a result of the company's inability to pay its debts, creditors of F.A., Inc. filed three suits in the District Court of Maryland, and on May 6, 1974, process was served on its president, then the same William E. Dixon whose professional corporation had previously made the second mortgage loan to F.A., Inc. Becoming aware that the property might soon be encumbered by judgment liens, the respondent on May 20, 1974, took a deed to the lot in lieu of foreclosure and in satisfaction of the $4,000 outstanding balance on its second mortgage. At the time William E. Dixon, P.A. took title to Lot 9, it was subject to a first deed of trust on which the balance was $12,675; however, the suits filed against F.A., Inc. were not reduced to judgments until June 14 or recorded in the notice of lien docket until June 20, several weeks after the respondent received its deed to the property.

Sometime during the ensuing year, the respondent completed construction of the house on Lot 9 at a cost undisclosed by the record, and on August 18, 1975, petitioners Edward W. and Elizabeth S. Sullivan contracted to buy the property for $61,900, with settlement to be on or before September 5, 1975. Settlement did not occur by that time, however, and on September 22, the respondent notified the Sullivans that if the sale was not consummated within five days legal action would be taken. Nonetheless, the petitioners refused to complete the transaction on the grounds that the house was not finished in accordance with the contract and that an outstanding judgment against Dixon individually (not William E. Dixon, P.A.) constituted a flaw in the title.[1]

The respondent, as promised, filed a bill of complaint for specific performance of the contract, and following a trial,

---

1. In fact, the record discloses that, unbeknownst to the seller, the petitioners had purchased another dwelling on September 12, 1975.

the Circuit Court for Anne Arundel County (Childs, J.) entered a decree on July 19, 1976, granting the seller relief which included specific performance and damages of $1,566.81.[2] In addition, the decree provided that if the Sullivans failed to consummate the sale within thirty days, the property was to be sold by a court-appointed trustee at the risk and expense of the buyers. The Sullivans noted an appeal to the Court of Special Appeals, but did not file a supersedeas bond to stay the proceedings, see Md. Rule 1017; consequently, the lot was sold at a judicial sale on September 27, 1976. The property was purchased at a price of $57,000 by Edward W. Sullivan, one of the petitioners, who concededly resold the property for $67,250 on November 2 to a third party not involved in the present action. Upon learning of this resale, the respondent moved to dismiss the petitioners' appeal on the ground that it had been rendered moot. The Court of Special Appeals, by unreported order of November 12, 1976, dismissed the appeal because it considered that some parts of the case were mooted by the public sale, and that the remaining aspects were premature under Maryland Rule 605 a. We granted certiorari. Concluding (1) that the trial court's order was not appealed prematurely since it adjudicated all the claims in the present action, (2) that it is preferable to reach an issue of first impression rather than the mootness question, and (3) that the circuit court correctly decided the merits of the case in favor of the respondent, we shall vacate the order of the Court of Special Appeals and affirm the judgment of the trial court.

Before this Court, the petitioners raised two defenses to specific enforcement of the contract: (1) that the property was unmarketable in September 1975, because the conveyance from F. A., Inc. to the respondent in May 1974 was fraudulent; and (2) that, because a professional corporation cannot invest in property for a purpose not necessary for the performance of the service, the respondent

---

**2.** The court arrived at the damage figure by finding that while the respondent proved damages of $3,416.81, it also showed mitigation to the extent of $1,850.00, for rents received.

never acquired title to Lot 9 and therefore had nothing to convey in 1975. We reject both contentions.[3]

With respect to the first point, the Sullivans seemingly suggest the following syllogism: the respondent knowingly participated in a conveyance which was fraudulent as to present and future creditors of F. A., Inc.; because there are three outstanding judgment liens against F. A., Inc., creditors holding these liens may, at some time in the future, initiate suit to have the conveyance from F. A., Inc. to the respondent, and from the respondent to the petitioners, set aside; such a suit would be successful inasmuch as the Sullivans had at least constructive knowledge of the fraud at the time of their contract to buy Lot 9 in August 1975; and therefore the property was unmarketable because of threats to its title. Even assuming, however, that the Sullivans (1) have standing to assert in essence the potential claims of F.A., Inc.'s creditors, (2) acquired knowledge of F.A., Inc.'s insolvency from the deed of that corporation to the respondent, and (3) have not waived their right to challenge the specific enforcement of the contract after signing it with knowledge of the claimed fraud, we believe the trial court correctly determined that the conveyance from F.A., Inc. to the respondent was not made with the intent to defraud creditors.

The portion of the Maryland Uniform Fraudulent Conveyance Act, Md. Code (1975), Com. Law Art., § 15-207, relied upon by the petitioners provides in pertinent part that "[e]very conveyance made ... with actual intent, as distinguished from intent presumed in law, to ... defraud present or future creditors, is fraudulent as to both present and future creditors." In recent cases arising under this statute, we have made plain that initially the burden of

---

**3.** The Sullivans have abandoned their other contentions made at trial, that a judgment against Dixon individually constituted a defect in the title, and that the seller failed to perform its part of the contract. In light of the result we reach, we need not consider the respondent's assertion that the petitioners are estopped from proceeding with the case because they accepted the benefits of the trial court's decree by purchasing at the trustee's sale.

proof is on the party attacking a transaction, that persons are not prohibited from giving preferential treatment even to close relatives so long as it is done without fraudulent intent and upon fair consideration, that an antecedent debt of a mortgagor constitutes valid consideration, and that Rule 886 governs our review of the chancellor's findings on the evidence. *Berger v. Hi-Gear Tire & Auto*, 257 Md. 470, 475-76, 263 A. 2d 507, 509-10 (1970); *see Beccio v. Tawnmoore Apartments*, 265 Md. 297, 299-301, 289 A. 2d 311, 312-13 (1972). An application of these principles to the facts of the present case compels the conclusion that actual fraud was not shown. Initially we note that the satisfaction of a mortgage constitutes valid consideration; here, there was *no* evidence introduced that the value of the property at the time of the conveyance to the respondent exceeded the total of the $4,000 balance of the respondent's second mortgage and the $12,675 balance of the first mortgage to which the property was subject. Moreover, besides the fact that persons are not prohibited from giving preferential treatment to one creditor over another, the respondent as holder of a mortgage was entitled to have preference over subsequent judgment lien holders. Under these circumstances, the mere showing that William E. Dixon was the person behind both the mortgagor and mortgagee corporations is of little consequence. Finally, we point out that even assuming the June 20, 1974 liens were enforceable against the subject property, there is no apparent reason why these liens totaling less than $5,000, together with the balance on the first mortgage of $12,675, could not have been paid by the respondent at the time of settlement from the $61,900 purchase price.

The petitioners' other contention — that the contract is unenforceable because the respondent could not legally invest in the property — involves this Court's first examination of the Maryland Professional Service Corporation Act. Md. Code (1975 & 1976 Cum.Supp.), Corp. & Ass'ns Art., §§ 5-101 to -122. This statute, similar in many respects to legislation in the District of Columbia and every state except Wyoming authorizing professional

corporations or professional associations, permits one or more persons who are licensed to perform a professional service to organize a professional corporation. § 5-102. *See generally* 6 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 2523.1 (1968 rev.); 1 F. O'Neal, *Close Corporations* § 2.04h (2d ed. 1971); Dunn, *Professional Corporations: Their Development and Present Status with Respect to the Practice of Medicine*, 24 U.Fla.L.Rev. 625, 635-40 (1972); Note, *Professional Corporations: Analysis Under the Tax Reform Act and Survey of State Statutes*, 58 Geo.L.J. 487, 502-33 (1970); Annot., 4 A.L.R.3d 383 (1965). Although the Maryland Act clearly limits the business of such corporations solely to rendering the service for which they were incorporated, it nonetheless permits them to make investments and own property. *See* § 5-104. This section, the one in dispute in the present case, provides in its entirety:

(a) *Business of corporation limited.* — A professional corporation may not engage in any business other than the performance of the professional service for which it was specifically incorporated.

(b) *Corporate investment and ownership of property.* — Notwithstanding any other provision of law, a professional corporation may invest its funds in real estate, mortgages, stocks, bonds, or any other type of investment, and may own real or personal property necessary for the performance of a professional service. [4]

The Sullivans contend that the phrase "necessary for the performance of a professional service" modifies the entire

---

4. Section 5-104 formerly appeared, in substantially the same language, as Article 23, § 436 of the Maryland Code (1957, 1973 Repl. Vol.):

No corporation organized under this subtitle shall engage in any business other than the rendering of the professional services for which it was specifically incorporated; provided, however, nothing in this subtitle or in any other provisions of existing law applicable to corporations shall prohibit a corporation from investing its funds in real estate, mortgages, stocks, bonds or any other type of investments, or from owning real or personal property necessary for the rendering of professional services.

sentence, and that because investment in Lot 9 was not necessary for the corporation to render its professional service, the respondent acted illegally when it acquired the mortgage, took the deed, and sold this real estate. For this reason the petitioners assert that the contract is unenforceable by a court of equity and concomitantly that the seller's bill of complaint should have been dismissed.

Assuming the buyers have standing to raise the issue of the illegality of the contract, we nonetheless conclude that the respondent's investment in, and later ownership and divestment of, the property was proper. We say this because it is clear to us that the words "necessary for the performance of a professional service" modify only the clause dealing with ownership of property, and were not intended to restrict the power of professional corporations to invest their funds. In light of the generally recognized rule of statutory construction that a qualifying clause ordinarily is confined to the immediately preceding words or phrase — particularly in the absence of a comma before the qualifying clause — the disputed language obviously should be construed in the first instance as modifying only the phrase "and may own real or personal property." *See Webb v. City of Baltimore,* 179 Md. 407, 409-10, 19 A. 2d 704, 705 (1941). *See generally* 2A J. Sutherland, *Statutes and Statutory Construction* § 47.33 (4th ed. C. Sands 1973); 73 Am.Jur.2d *Statutes* §§ 229-31 (1974). And since nothing in the statute indicates that such a reading would be contrary to the intent of the legislature, we have no occasion to construe the language otherwise. Accordingly, we conclude that professional corporations may invest their funds in, among other ventures, mortgages of any sort; they are not limited to making investments which are necessary for the performance of the professional service.[5] Had the legislature

---

[5] We note, however, that the respondent would be precluded by the terms of § 5-104 (a) from engaging in the business of mortgaging, or buying and selling, real property. While it may be difficult under other circumstances to distinguish between mere "investment" and active "engaging in a business," *see* Note, *Professional Corporations: Analysis Under the Tax Reform Act and Survey of State Statutes,* 58 Geo.L.J. 487, 516-17 (1970), it is plain that the sale of Lot 9 was a disposition solely to recover invested funds and not incidental to the operation of a real estate business.

intended the narrow interpretation advocated by the petitioners, it surely would not have used the unrestrictive language "any other type of investment." And as the respondent points out in its brief: "One would wonder when, if ever, the purchase of stocks or bonds would be necessary for the performance of a professional service." Although the portion of § 5-104 (b) relating to ownership of property is somewhat redundant under this analysis, we believe the General Assembly merely intended to remove any doubts, possibly raised by the categorical language of § 5-104 (a), regarding the power of a professional service corporation to own real or personal property necessary or appropriate to carry on the business of the professional service.[6]

Since the title to the property in dispute here was not affected by a fraudulent conveyance, and since the respondent had the power under Maryland law to acquire and sell it to the Sullivans, the trial court's conclusion that specific performance should be granted was not erroneous. The title to Lot 9 was free from reasonable doubt, and the purchaser was obligated to accept it. *See, e.g., Styers v. Dickey,* 261 Md. 225, 231-32, 274 A. 2d 374, 378 (1971); *Berlin v. Caplan,* 211 Md. 333, 343-44, 127 A. 2d 512, 518 (1956).

> *Judgment of the Court of Special Appeals vacated and case remanded to that court with directions that it affirm the judgment of the Circuit Court for Anne Arundel County.*
> *Costs to be paid by the petitioners.*

---

6. We also point out that the Maryland legislature's explicit reference to ownership of property in addition to its reference to investment in property is in no way unique. The vast majority of professional corporation laws, admittedly often in more unambiguous language, absolutely proscribe the engagement in a business other than the professional service, but qualify that prohibition by permitting ownership of real and personal property necessary to the rendering of the service as well as separately providing for investments of any type. *See, e.g.,* Del. Code Tit. 8, § 609 (1974); Mass. Ann. Laws ch. 156A, § 4 (Michie/Law. Co-op 1970); N. M. Stat. Ann. § 51- 22-5 (1975 Supp); Pa. Stat. Ann. Tit. 15, § 12604 (Purdon 1967); Utah Code Ann. § 16-11-6 (1973); Vt. Stat. Ann. Tit. 11, § 804 (1973).