## EMPLOYMENT SECURITY ADMINISTRATION
### *v.* GENE S. WEIMER

[No. 78, September Term, 1978.]

*Decided May 4, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Lois F. Lapidus, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Joel J. Rabin* and *Carolyn I. Polowy, Assistant Attorneys General,* on the brief, for appellant.

No brief filed on behalf of appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The question presented in this case concerns a Federal Civil Service pensioner's eligibility to receive unemployment compensation benefits in light of Maryland Code (1957, 1979 Repl. Vol.), Art. 95A, § 6 (h).

In order to afford federal employees protection against some of the risks of unemployment, Congress enacted the Unemployment Compensation for Federal Employees Act, 5 U.S.C. § 8501, *et seq.,* in 1954. Essentially the Act empowers the Secretary of Labor to enter into agreements with states, under which a particular state's unemployment compensation law would control the eligibility of federal workers for these benefits. When such an agreement is in force, as is the case in Maryland (*see* Art. 95A, § 19 (a)), a discharged government employee simply follows the identical procedures and is subject to the same eligibility criteria as any other claimant for unemployment compensation in the state. The jurisdiction

where the worker "had his last official station in Federal service" is ordinarily the state whose unemployment insurance laws govern the claim. Under such an agreement, the state acts as an agent of the United States, and is reimbursed for any expenses incurred in providing benefits to eligible applicants.

Section 6 (h) of Art. 95A requires an offset or reduction in unemployment compensation benefits when an applicant for these benefits is also receiving certain retirement benefits. In order to fall within § 6 (h) a person must be receiving a pension or annuity paid for in whole or in part from an employer who is a "base period employer" for purposes of the unemployment compensation claim.[1] In addition, only retirement benefits from "a pension or annuity under a private pension plan" result in a reduction of unemployment compensation. Unless both of these conditions are met, there will be no reduction in benefits under § 6 (h).

The plaintiff in this case, Gene S. Weimer, retired from the Federal Bureau of Investigation in October 1971, on a civil service pension of approximately $800.00 per month. Two months after retirement, Weimer accepted a position with the Navy Exchange at the Patuxent River Naval Station, located in St. Mary's County, Maryland. The plaintiff was hired to work as the manager of the Security Department at this facility. Since the Navy Exchange is what is known as a "non-appropriated fund" instrumentality of the federal government, its employees are excluded from the federal civil service system, 5 U.S.C. § 2105. As a consequence, Mr. Weimer, a civil service pensioner, could continue to receive his government pension while drawing a salary from the Navy Exchange.

In December 1974, as a result of a scale-down in the operations performed at the Navy Exchange, Mr. Weimer's services were terminated. Upon discharge, he filed a claim for unemployment compensation benefits with the Maryland

---

1. The first four of the last five completed calendar quarters immediately preceding the date on which an initial claim for unemployment benefits is made constitute the "base period." A "base period employer" is an employer who pays base period wages for insured work to the claimant. See Art. 95A, § 20 (a); COMAR 07.04.02.12B(1).

Employment Security Administration in accordance with the provisions of the Maryland Unemployment Insurance Law, Art. 95A. This application was initially rejected because, according to the claims examiner, Art. 95A, § 6 (h), required that his civil service pension payments be offset against the unemployment benefits otherwise available. In light of the amount of his retirement payments, the Employment Security Administration found that Mr. Weimer was not eligible for any unemployment compensation benefits.

Pursuant to § 7 (e) of the Unemployment Insurance Law, the plaintiff took an appeal to a "referee" who upheld the decision of the claims examiner. A final administrative appeal was taken under § 7 (f) to the Board of Appeals, which directed that a hearing be held on the matter. At the hearing, Mr. Weimer contended that the pension disqualification provision of § 6 (h) was inapplicable to his situation on two grounds. He first argued that § 6 (h) related only to private pension plans and had no bearing upon government retirement benefits. The plaintiff went on to maintain that, in any event, he did not fall within the scope of § 6 (h) because the Navy Exchange should not be viewed as the same employer as the one paying his civil service pension, and therefore he was not receiving retirement payments from a base period employer as required by § 6 (h). The Board rejected these contentions and upheld the denial of benefits.

Upon the plaintiff's action for judicial review in accordance with Art. 95A, § 7 (h), the Circuit Court for St. Mary's County reversed the administrative decision. The court, after first pointing out that § 6 (h) directed the offset of pension payments from unemployment benefits only where the pension was "paid for in whole or in part by a base period employer," determined that the plaintiff's employment positions with the F.B.I. and the Navy Exchange were "separate, distinct and unrelated." The court concluded that the plaintiff "did not receive pension benefits that were paid for by his base period employer," and it ordered the award of unemployment benefits. Because the circuit court rested its decision on the ground that the pension was not paid for by a base period employer, it did not have to deal with the

other condition for § 6 (h) to be applicable, namely that the retirement payments constitute "a pension or annuity under a private pension plan."

The Employment Security Administration took an appeal to the Court of Special Appeals, and, before any proceedings in that court, we issued a writ of certiorari. The Administration argues both, as it must in order to prevail, (1) that the civil service retirement benefits were paid for in whole or part by a base period employer, and (2) that these retirement benefits constituted a "pension or annuity under a private pension plan."

In our view, the plaintiff's civil service pension does not amount to a "pension or annuity under a private pension plan," and therefore this condition for the applicability of the § 6 (h) offset was not met. We shall affirm the judgment below on this ground, and thus we need not consider the question of whether the pension was paid for in whole or part by a "base period employer."

The pertinent language of § 6 (h) provides for the reduction in unemployment compensation where a claimant

> "is receiving or has received an amount equal to or in excess of his weekly [unemployment] benefit amount in the form of a *pension or annuity under a private pension plan* paid for in whole or in part by a base period employer." (Emphasis supplied.)

The Employment Security Administration's argument that the plaintiff's federal civil service retirement payments are covered by the italicized language is as follows. First, the Administration invokes the principle of statutory construction "that a qualifying clause ordinarily is confined to the immediately preceding words or phrase," *Sullivan v. Dixon,* 280 Md. 444, 451, 373 A. 2d 1245 (1977), and authorities there cited. Based on this, the Administration asserts that the qualifying clause "under a private pension plan" modifies only "annuity" and not "pension."

The Administration next contends that "pension" and "annuity" have different meanings, and it quotes the definitions set forth in Code (1957, 1978 Repl. Vol.), Art. 73B,

§§ 1 (16) and 1 (17), relating to the various retirement systems for Maryland public employees, as "well established" definitions of the terms. Those sections state:

> "(16) *'Annuity'* shall mean payments for life derived from the accumulated contributions of a member. All annuities shall be payable in equal monthly installments.

> "(17) *'Pension'* shall mean payments for life derived from money provided by the State. All pensions shall be payable in equal monthly installments."

However, the Employment Security Administration does seem to acknowledge that there is some ambiguity associated with the meanings of the two words, that the meanings may vary depending on the context, and that the word "pension" may be used with respect to private employment as well as public.[2]

Nevertheless, the Administration asserts that it is not *who* pays the retirement benefits (*i.e.,* government or private) which distinguishes a pension from an annuity, but "it is the [monetary] source from which the retirement payments are derived rather than the type of employer which is critical." Consequently, the Administration argues, it is only a public "annuity" as defined in Art. 73B, § 1 (16), which is not

---

2. Some older cases discussing the meaning of the word "pension" seem to limit it to payments made by a governmental or public body. Frisbie v. United States, 157 U. S. 160, 166, 15 S. Ct. 586, 39 L. Ed. 657 (1895); United States v. Teller, 107 U. S. 64, 68, 2 S. Ct. 39, 27 L. Ed. 352 (1883); Walton v. Cotton, 60 U. S. (19 How.) 355, 358, 15 L. Ed. 658 (1857). *See also* Black's Law Dictionary, p. 1291 (rev. 4th ed. 1968). However, the modern commonly understood meaning of the word "pension," insofar as it relates to retirement payments, is defined in Webster's New International Dictionary of the English Language, pp. 1811-1812 (2d ed. unabridged, 1961) as:

> " . . . 3. A stated allowance or stipend made by a government *or business organization,* in consideration of past services or of the surrender of rights or emoluments, to one retired from service . . . ." (Emphasis supplied.)

*See also* Ulmann v. Sunset-McKee Company, 221 F. 2d 128, 132 (9th Cir. 1955). Furthermore, the General Assembly has often used the word "pension" to refer to private retirement systems. *See, e.g.,* Code (1957, 1976 Repl. Vol.), Art. 27, § 138A; Code (1974), § 11-102 (c) of the Estates & Trusts Article; Code (1957, 1975 Repl. Vol.), Art. 81, § 313; Code (1957, 1979 Repl. Vol.), Art. 100, § 108.

encompassed by the offset provision of § 6 (h) of the Unemployment Compensation Law. According to the Administration, all pensions, whether governmental or private, and private annuities, must be applied to reduce unemployment benefits. Since, as the Employment Security Administration concludes, the plaintiff's retirement payments constitute a "pension" rather than an "annuity," the payments must be applied to reduce unemployment compensation benefits.

The construction of § 6 (h) advanced by the Employment Security Administration is, in our opinion, untenable in light of the language of the statute. It is true that in construing statutes, "a qualifying clause *ordinarily* is confined to the immediately preceding words or phrase," *Sullivan v. Dixon, supra,* 280 Md. at 451 (emphasis added). But, as the quoted language from the *Sullivan* case makes clear, this is not an absolute rule. As explained by Sutherland:

> "The rule is but another aid to discovery of intent or meaning, however, and not an inflexible and uniformly binding rule. Where the sense of the entire act requires that a qualifying word or phrase apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent." 2A J. Sutherland, *Statutes and Statutory Construction* § 47.33 (4th ed. C. Sands 1973).

*See also, e.g., United States v. Babbit,* 66 U. S. (1 Black) 55, 61, 17 L. Ed. 94 (1862); *United States v. Brandenburg,* 144 F. 2d 656, 660-661, (3d Cir. 1944); *Selectmen of Topsfield v. State Racing Commission,* 324 Mass. 309, 86 N.E.2d 65, 68-69 (1949); *Johnson v. Craddock,* 228 Ore. 308, 365 P. 2d 89, 93-94 (1961). With regard to § 6 (h), the sense of the entire section makes it clear that the Legislature was not distinguishing "pension" from "annuity" based upon the source of payment, with the "private" clause qualifying only an "annuity" as so defined.

To reiterate, the critical language of § 6 (h) is "pension or annuity under a private *pension* plan" (emphasis added). If the Legislature intended "pension" to mean retirement

payments with the monetary source being the employer's funds, and to distinguish this from "annuity" meaning retirement payments derived from the employee's contributions, and further intended the qualifying clause to modify just "annuity," it is inconceivable that it would have used the word "pension" again in the qualifying clause. It may have said pension or annuity "under a private *retirement*" plan or "under a private *annuity* plan" or merely "under a private plan." But if the Legislature were deliberately distinguishing between "pension" and "annuity," with the qualifying clause relating only to the latter, the word "pension" would not likely have been repeated in the qualifying clause. The context suggests that the Legislature was not concerned in § 6 (h) with differentiating between a pension and an annuity; rather, it was using the words "pension or annuity" as a single phrase to mean "retirement payments," with the qualifying clause modifying the entire phrase.

Other language in Art. 95A, § 6 (h), confirms that the Legislature was not using "annuity" to mean payments derived solely from the employee's contributions, and "pension" to mean payments derived solely from the employer's contributions, which are the definitions set forth in Art. 73B. After the qualifying clause concerning a private pension plan, § 6 (h) goes on to say "paid for in whole or in part by a base period employer, as provided below . . . ." Obviously, the Legislature was not in § 6 (h) dealing with an "annuity" as defined in Art. 73B, *i.e.,* one based entirely on the contributions of the employee. Instead, § 6 (h) is limited in its operation to retirement plans paid for in whole or part by the employer. If "annuity" means what the Employment Security Administration urges, and if the qualifying clause modifies only "annuity" as further contended for, then the entire phrase "annuity under a private pension plan" would be superfluous or meaningless. Such a construction would violate the well-settled principles that all parts of a statute are to be given effect and harmonized if possible, and that a statute should not be construed so as to render any language surplusage or meaningless. *Condominium Owners v.*

*Supervisor,* 283 Md. 29, 32, 388 A. 2d 116 (1978); *Schweitzer v. Brewer,* 280 Md. 430, 438, 374 A. 2d 347 (1977); *Supervisor v. Southgate Harbor,* 279 Md. 586, 590, 369 A. 2d 1053 (1977); *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 403, 365 A. 2d 279 (1976); *Holmes v. Crim. Injuries Comp. Bd.,* 278 Md. 60, 66, 359 A. 2d 84 (1976); *Gillespie v. R & J Constr. Co.,* 275 Md. 454, 457, 341 A. 2d 417 (1975).

Moreover, nothing in the normal or commonly understood definition of the word "annuity" compels the interpretation asserted by the Employment Security Administration.[3] Although the word is sometimes defined as payments at stated intervals derived from contributions or premiums paid by the recipients,[4] it also sometimes is used to refer to periodic payments without regard to the source.[5] In addition, courts have recognized that the word "annuity" is often used in statutes as synonymous with the word "pension." *See, e.g., Holmes v. Cook,* 45 Ala. App. 688, 236 So. 2d 352, 355 (1970); *Dodge v. Board of Education,* 364 Ill. 547, 5 N.E.2d 84, 88 (1936), *aff'd,* 302 U. S. 74, 81, 58 S. Ct. 98, 82 L. Ed. 57 (1937); *State ex rel. Wander v. Kimmel,* 256 Mo. 611, 165 S. W. 1067, 1072 (1914); *Aetna Fire Ins. Co. v. Jones,* 78 S.C. 445, 59 S. E. 148, 152 (1907); *City of Dallas v. Trammell,* 129 Tex. 150, 101 S.W.2d 1009, 1015, 112 A.L.R. 997 (1937).

In light of the entire language of Art. 95A, § 6 (h), it would make little sense to conclude that the Legislature intended, for purposes of that statute, to distinguish between "pension" and "annuity" based upon the monetary source of the retirement payments. Instead, it is obvious that the Legislature was using the phrase "pension or annuity" to

---

3. We have, of course, pointed out many times that ordinarily words in a statute should be given their normal, generally understood meaning. *E.g.,* Board v. Goodsell, 284 Md. 279, 284, 396 A. 2d 1033 (1979); State Farm Mut. Auto. Ins. Co. v. Ins. Com'r, 283 Md. 663, 670, 392 A. 2d 1114 (1978); Gietka v. County Executive, 283 Md. 24, 27, 387 A. 2d 291 (1978); Wheeler v. State, 281 Md. 593, 596, 380 A. 2d 1052 (1977), *cert. denied,* 435 U. S. 997, 98 S. Ct. 1650, 56 L.Ed.2d 86 (1978); Coleman v. State, 281 Md. 538, 546, 380 A. 2d 49 (1977); Supervisor v. Southgate Harbor, 279 Md. 586, 591, 369 A. 2d 1053 (1977).

4. Art. 73B, § 1 (16); The Random House Dictionary of the English Language (Unabridged ed. 1967), p. 60.

5. Webster's New International Dictionary (2d ed., unabridged 1961), p. 108.

refer generally to retirement payments, with the qualifying clause "under a private pension plan" modifying the entire phrase. Since the plaintiff's monthly retirement payments were not "under a private pension plan," § 6 (h) is inapplicable.

*Judgment affirmed.*
*Appellant to pay costs.*