**RIEGEL POWER CORPORATION;
Mount Vernon Mills, Inc.,
Plaintiffs–Appellants,**

v.

**VOITH HYDRO; Crowder Construction
Company, Defendants–Appellees.**

No. 88–1316.

United States Court of Appeals,
Fourth Circuit.

Argued May 10, 1989.

Decided Nov. 6, 1989.

Moffatt G. McDonald (John B. McLeod, Haynsworth, Marion, McKay & Guerard, Greenville, S.C., on brief), for plaintiffs-appellants.

Robert L. Binder (Douglas M. Hagerman, Foley & Lardner, Milwaukee, Wis., C. Alan Runyan, Speights & Runyan, Hampton, S.C., on brief), for defendants-appellees.

Before RUSSELL and WILKINSON, Circuit Judges, and HADEN, Chief United States District Judge for the Southern District of West Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

This is an action by a buyer-plaintiff to recover of a seller-defendant damages for breach of a warranty of merchantability and freedom of defects in connection with the sale of an electric turbine. The buyer-plaintiff originally was Riegel Textile Company, but Riegel Power Corporation and Mount Vernon Mills, Inc. are the successors in "interest or assignees of Riegel Textile rights under the contract" and sue as such. The plaintiffs are collectively referred to by the parties and the district court as "Riegel"; we do likewise. The defendant Voith Hydro is the successor in interest of the initial defendant, Allis–Chalmers Hydro, Inc. We refer herein to the defendant as "Voith Hydro." The defendant pled by way of defense (1) the provision in the contract of sale of an exclusive limitation of liability for a breach of warranty to an obligation to repair or replace and (2) the provision proscribing recovery of consequential damages. Admitting the exclusive limitation of the limitation provision, the plaintiff responded that under Delaware law, which was controlling, an exclusive limitation of warranty liability is ineffective "where circumstances cause an exclusive or limited remedy to fail of its essential purpose," 6 Del.Code § 2–719(2), and that in this case there is such failure of "essential purpose."

On motion for summary judgment, based on affidavits filed by the parties, the district court sustained, under Delaware law,

the validity of the exclusive limitation of the liability clause in the contract of sale herein and found that such provision had not failed of its "essential purpose." It therefore granted judgment in favor of the defendant on that ground and did not address the provision in the contract proscribing recovery of consequential damages. We affirm.

On February 12, 1982, the plaintiff accepted a written offer of the defendant to supply a hydro-electric turbine for use in the plaintiff's Ware Shoals (South Carolina) installation. The installation of the turbine was contracted by Riegel to a third party. The defendant shipped, as agreed, certain parts to be imbedded into the concrete foundation below the turbine and in January 1983 was ready to deliver and tendered, as if actually shipped, the turbine. The plaintiff, however, was not ready to accept delivery and requested the defendant not to ship the turbine. Due to this delay by the plaintiff and its installation contractor, the turbine was not actually installed and put in operation until June 11, 1984.

The repair or replace warranty obligation of the plaintiff under the contract of sale had a time limit of 18 months for delivery or tender of delivery. Such warranty would expire in July 1984, two or three weeks after the turbine was put in operation. The defendant called this fact to the plaintiff's attention by letter of February 17, 1984, and offered, for a fee, to extend the warranty. The plaintiff did not avail itself of the offer. On its copy of the defendant's letter of February 17, someone in the plaintiff's organization with the initials "RG" had written as of "2–27–84 not necessary generator will be insurance." The defendant took this to mean that, since the plaintiff already had a usable turbine and this new turbine was to supplement or operate as a back-up for the existing turbine, the latter turbine would provide the "necessary" insurance. Whatever the reason, the plaintiff did not elect to extend the warranty which, by its terms, expired in July 1984. Even though the warranty had expired, caused, as defendant says, largely by the fact that "the construction and installation schedules (which were the responsibility of third parties engaged by the plaintiff) were in excess of one year late," the defendant declared in a letter to the plaintiff that nonetheless it committed itself to "the successful start-up and commissioning of the Ware Shoals unit" and it carried out this commitment by promptly responding to every complaint of the plaintiff and of correcting every problem until full operation.

After joinder of issues, the parties engaged in certain discovery. In answer to an interrogatory, the plaintiff listed four times during which the turbine was down for repairs on account of which it premised its claim of failure of its essential purpose defense. The first of these occurred in July 1984. The other problems occurred at various times from July 1984 until 1987, all after the warranty had expired. The turbine operated without any significant problems from October 1985 to October 1986. Any problems were corrected and the turbine was fully operational on July 26, 1984, thereby satisfying the commitment made by the defendant.

The plaintiff sought to prove by some records supplied by the affidavit of its president that because of "mechanical failures" the turbine in 1987 was inoperable for about half the time between 1984 and 1987 when the turbine became fully operational. The district court dismissed this evidence because the plaintiffs had "not made the requisite connection between the turbine's lost time or possible future problems and any act attributable to [the defendant]." This finding was based on the records themselves and on other facts in the record, particularly the affidavit of the defendant's project manager. In the affidavit of the defendant's project manager for the Ware Shoals project he stated that "most or all of these problems (between 1984 and 1987) were caused by Riegel Textile's (or its contractor's) negligent installation of the turbine, Riegel Textile's and the plaintiffs' negligent maintenance and operation of the turbine, and the negligence of Riegel Textile, the plaintiffs, and their agents in overriding, bypassing or disabling certain protective devices on the tur-

bine." It seems undisputed that, whatever differences may have existed as to the cause of the problems encountered in the shakedown of the turbine, between 1984 and early 1987 "Voith Hydro or A–C Hydro promptly sent, at no cost to Riegel or the plaintiffs, repair personnel to Ware Shoals to perform the diagnostic and repair services necessary to render and keep the turbine operational." The plaintiffs made no attempt to refute this affidavit.

■ The defendant moved for summary judgment, contending that the undisputed record established that it had satisfied the requirement of repair or replace, which was the exclusive remedy under the contract of sale for breach of warranty. The parties agreed that the exclusive remedy for breach of warranty in this case was limited to repair or replace. Such a limitation was admittedly valid under the controlling Delaware Code. It seems equally agreed that the defendant responded promptly to every complaint of the plaintiffs and did finally furnish the plaintiffs a fully operational turbine. The real issue in the case, as posed by the plaintiffs, was whether the lost time in the operation of the turbine while the defendant was repairing the turbine was such that in a commercial sale such as this one it could be said that the exclusionary remedy for breach of warranty under the contract of sale had failed its "essential purpose." The district judge found that the plaintiffs had failed to offer any credible proof to support the claim that the exclusive limitation had failed its "essential purpose" and, therefore, granted defendant's motion for summary judgment. We agree.

As we have observed, there is no question of the applicability and validity of the exclusive repair or replace remedy in this case under controlling Delaware law. 6 Del.Code § 2–719. Nor is there any dispute that, under Delaware law, the exclusive repair or replace may be invalidated if the seller's performance is such that it can be said that the limitation or remedy had failed its "essential purpose." 6 Del.Code § 2–719(2). The Code, however, has not identified the circumstances which will jus-

tify a finding of failure of "essential purpose" in this context. This indefiniteness in the statutory language was found by the court in *J. A. Jones Const. Co. v. Dover*, 372 A.2d 540, 549 (Del. Super. Ct.), *appeal dismissed*, 377 A.2d 1 (Del.1977), to have been intended in order "to provide flexibility in molding contractual liability according to the actual nature of the transaction." Accordingly, "[i]n determining whether the contract limitation fails of its essential purpose, the facts and circumstances surrounding the contract, the nature of the basic obligations of the party, the nature of the goods involved, the uniqueness or experimental nature of the items, the general availability of the items, and the good faith and reasonableness of the provision are factors which should be considered." *Ibid.* Applying these factors, there are, as a leading text has put it, "relatively few situations where a remedy [such as the repair or replace provision] can fail of its essential purpose." 1 White & Summers, *Uniform Commercial Code*, 602 (West, 3d ed. 1988). This is not one of such "few situations" where the limitation of liability is rendered invalid by failure of its "essential purpose."

One of the most relevant factors to be considered under the *Dover* statement is the type of goods or product involved, *i.e.*, whether the sale is classified as a commercial or consumer sale. *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933, 941 (7th Cir.1978). We recognized the relevance of this distinction in *Waters v. Massey–Ferguson*, 775 F.2d 587, 592–93 (4th Cir.1985). The importance of this difference in type of products sold is well stated by Professor Hawkland in 3 *Uniform Commercial Code Series*, 447 (Callaghan 1984):

A more difficult case arises where the seller makes good faith but unsuccessful efforts to repair the defective goods. Where the buyer is a consumer this state of affairs should usually be sufficient to invalidate the prescribed remedy term on the basis of failure of essential purpose, and the same result ought to obtain as between merchants where standard goods are sold because the assumption in each case is that the seller can cure the

defects that may crop up with regard to such goods. The situation and result may be different where the goods are experimental items, of complicated design, or built especially for the buyer. In those cases, the repair or replacement clause may simply mean that the seller promises to use his best efforts to keep the goods in repair and in working condition and that the buyer must put up with the inconvenience and loss of down time.

It has been often said that a sale of an electric turbine qualifies as a commercial and not as a consumer sale; in fact, we have been cited no decisions to the contrary. Many of the cases to this effect were cited by the court in *J.A. Jones Const. Co. v. Dover, supra*, at 551. To quote the language of the court in *American Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F.Supp. 435, 458 (S.D.N.Y.1976),

the rule that the agreed-upon allocation of commercial risk should not be disturbed is particularly appropriate where, as here, the warranted item is a highly complex, sophisticated, and in some ways experimental piece of equipment. Moreover, compliance with a warranty to repair or replace must depend on the type of machinery in issue. In the case of a multi-million dollar turbine-generator, we are not dealing with a piece of equipment that either works or does not, or is fully repaired or not at all. On the contrary, the normal operation of a turbine-generator spans too large a spectrum for such simple characterizations.[1]

Generally, in the commercial cases, the "essential purpose" exclusion arises only where the seller has refused to make repairs as he was required or where he cannot repair the product. In *American Electric*, which involved a turbine sale as does this case, the claim of the buyer, supported by evidence in the record, was that the seller in that case had "acted in bad faith in repairing the Unit," had "been wilfully dilatory in rendering repairs," but had "not merely failed to repair or replace but [had]

repudiated its obligation to repair and replace." 418 F.Supp. at 453. In such a case, it was for the jury to determine whether the limited warranty had failed of its "essential purpose."

This, however, is not a case such as *American Electric*. The buyer and seller were enterprises managed by sophisticated businessmen who were thoroughly acquainted with and experienced in the electric generating business. The parties acted in good faith both in agreeing on the contract and in performance under the contract. Unlike the seller in *American Electric*, the seller in this case is not charged with bad faith or with being "wilfully dilatory" in rendering repairs nor did it repudiate its obligation to repair. Even though its warranty had expired, the defendant in this case responded promptly to every complaint of the buyer, sent its personnel to the Ware Shoals unit, and made the necessary repairs. It continued to follow this course for three years after the warranty expired until the turbine could be pronounced fully operational in every way. Taking into account the type of product involved, it is understandable that there were five times when some difficulty arose in the break-in of the turbine. Moreover, the seller-defendant acted promptly to correct the difficulty. The defendant, even though its obligation under the sale agreement had expired, carried out its "commitment to the successful start-up and commissioning of the Ware Shoals unit." It went beyond its obligation under its limited warranty and the district court correctly granted summary judgment in its favor. Even were this a consumer case, it is doubtful that the plaintiff would have been able to sustain failure of an "essential purpose" claim. *Olmstead v. General Motors Corp.*, 500 A.2d 615, 619 (Del.Super.Ct. 1985); *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d 1081, 1085 (3d Cir.1980).

■ Since the district judge decided the case on the issue whether the limited war-

---

**1.** *Beal v. General Motors Corp.*, 354 F.Supp. 423 (D. Del.1973), a case cited by the plaintiffs, is irrelevant here because the sale in that case was of a consumer item as identified by Professor Hawkland in his text.

ranty had failed its essential purpose, he found it unnecessary to decide whether the proscription of recovery of consequential damages barred the suit. There is some conflict in the decisions whether the proscription of consequential damages is independent of the "essential purpose" exception to the repair or replace limitation of a breach of warranty suit, but the more recent cases indicate that the two provisions are independent and are to be applied as such. *Kaplan v. RCA Corp.*, 783 F.2d 463, 467 (4th Cir.1986); *Chatlos Systems, Inc. v. National Cash Register Corp.*, 635 F.2d at 1086; *S.M. Wilson & Co. v. Smith International, Inc.*, 587 F.2d 1363, 1375–76 (9th Cir.1978); *Potomac Electric Power Co. v. Westinghouse Electric Corp.*, 385 F.Supp. 572, 575 (D.D.C.1974), *rev'd on other grounds without opinion*, 527 F.2d 853 (D.C.Cir.1975); *Envirotech Corp. v. Halco Engineering, Inc.*, 234 Va. 583, 364 S.E.2d 215, 219–20 (1988).

The judgment of the district court is accordingly

AFFIRMED.