**POTOMAC CONSTRUCTORS, LLC, Plaintiff,**

v.

**EFCO CORP., Defendant.**

**Civil No. RWT 06–2918.**

United States District Court, D. Maryland.

Jan. 9, 2008.

Wilson Lamark White, Keith L. Richardson, Kilpatrick Stockton, LLP, Atlanta, GA, Stephen E. Baskin, Kilpatrick Stockton, LLP, Washington, DC, for Plaintiff.

Cyril Vincent Smith, III, P. Andrew Torrez, Zuckerman Spaeder, LLP, Baltimore, MD, David Laird Charles, Crowley, Haughey, Hanson, Toole and Dietrich, Billings, MT, for Defendant.

Kirk Edward Niemi, Watt, Tieder, Hoffar and Fitzgerald, LLP, McLean, VA, for Movants.

## MEMORANDUM OPINION

ROGER W. TITUS, District Judge.

Bridges and contracts have a lot in common. They both unite people, they both make commerce possible, and they both need to be put together very carefully. The parties in this case put considerable care into negotiating their contract for bridge-building equipment and materials. To paraphrase Justice Scalia's observation in *Whitman v. American Trucking Ass'n*, were it not for the hundreds of pages of memoranda and exhibits submitted by the parties, one would have thought the contract they signed was relatively clear. 531 U.S. 457, 465, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). Defendant's Motion for Partial Summary Judgment seeks to exclude damages which it claims were limited by the contract between the parties. Because the Court finds that the plain terms of the contract limit the damages Plaintiff may seek, Defendant's Motion for Partial Summary Judgment on the issue of contractual damages shall be granted.

Plaintiff also seeks damages for costs allegedly caused by Defendant's negligence. The bulk of Plaintiff's negligence and indemnification damages are barred by the economic loss doctrine. However, because a portion of Plaintiff's claim may fall into a narrow exception to that doctrine, Defendant's Motion for Summary Judgment on Plaintiff's negligence and indemnification counts shall be granted in part and denied in part.

### SUMMARY OF FACTS

#### A. THE PROJECT

Plaintiff was the general contractor for the Maryland approach spans in the $2.5 billion dollar project to replace the Woodrow Wilson Bridge.[1] Plaintiff's $191 mil-

---

1. The Woodrow Wilson Bridge carries the Washington area's "beltway" (Interstate Route 495) over the Potomac River.

lion dollar contract with the Maryland State Highway Administration included a strict time-line and daily financial penalties for delays. Plaintiff entered into a purchase order agreement with Defendant to engineer and supply steel "formwork" for $2.075 million dollars. The formwork was used to cast concrete segments that would be incorporated into the bridge's support structure. Plaintiff now seeks damages of thirteen million dollars, claiming that the entire project was significantly delayed by (1) Defendant's tardy deliveries, and (2) the poor quality of the formwork.

Plaintiff's Complaint contains three counts. In Count I, Plaintiff alleges that Defendant breached its contract by "failing to deliver the formwork on time, failing to properly design the formwork, [and] by supplying formwork that did not perform as required." Compl. ¶ 45. In Count II, Plaintiff alleges that Defendant was negligent in its design of the formwork, and seeks compensation for damages allegedly caused by Defendant's negligence. In Count III, Plaintiff seeks indemnification from Defendant for "cost[s] from third parties impacted by [Defendant's] negligence."

## B. THE CONTRACT

The Purchase Order agreement entered into by the parties contains a section entitled "WARRANTY AND CONDITIONS." This section enumerates the remedies available for breach of the Purchase Order. The relevant language states that:

> Seller's liability shall be strictly limited to those charges, expenses, costs and damages expressly provided for in this agreement. Seller shall, in no event, be liable for any additional or consequential damages....
>
> The Property sold hereunder is warranted against defective workmanship or materials only, and Seller's liability is

strictly limited to the repair or replacement of any defective property.... In no event shall Seller's liability exceed the actual and direct costs of labor, materials, transportation and equipment reasonably necessary for the repair or replacement of equipment covered, nor include any other incidental, indirect, or consequential damages....

> Seller will use all reasonable means to deliver within the time specified, but assumes no liability for loss or damage arising from delay, or no [sic] fulfillment of contract by reasons of fires, strikes, delays in transportation, regulations of the United States Government, or any cause which is unavoidable or beyond its control.

Defendant's Motion for Partial Summary Judgment argues that the language quoted above "excluded incidental, indirect, or consequential damages, and damages for delays," and limits Defendant's liability to the costs of repairing or replacing any defective property sold under the agreement. Plaintiff disputes Defendant's interpretation of the three clauses. Plaintiff argues that this language does not limit incidental damages, and that the "repair and replacement" limitation is "unenforceable because it failed of its essential purpose."

### ANALYSIS

## A. INCIDENTAL AND CONSEQUENTIAL DAMAGES

The Purchase Order clearly excludes incidental and consequential damages, and limits Plaintiff's potential relief to "the actual and direct costs of labor, materials, transportation and equipment reasonably necessary for the repair or replacement of equipment." Under Maryland Commercial Code § 2–719, parties to a contract may "limit or alter the measure of damages recoverable" in the event of breach.

This freedom to limit damages may be used to curtail both consequential and incidental damages. *See, e.g., Dowty Comm. v. Novatel Computer Sys. Corp.,* 817 F.Supp. 581, 585 (D.Md.1992) (holding that incidental and consequential damages were both excluded by language which (1) limited damages to the cost of repair and (2) stated that the defendant would "[i]n no event ... be liable for incidental [or] consequential ... damages"). The statutory authority in Maryland to contractually limit recoverable damages is constrained by § 2–219(3), which prevents enforcement of unconscionable exclusions of consequential damages. MD.CODE ANN., COM. LAW § 2–719(3).

In this case, the first sentence on the warranty and conditions page unambiguously takes the parties out of the default remedies regime of Maryland contract law. It strictly limits Defendant's potential liability to the "charges, expenses, costs and damages expressly provided for in [the] agreement." The second sentence stresses that Defendant "shall, in no event, be liable for any additional or consequential damages." The contract subsequently provides for an express warranty against defective workmanship. However, the warranty is limited to "the repair or replacement of defective property," and explicitly disavows "incidental, indirect, or consequential damages."

■ Because the contract specifically disallows consequential damages, and Plaintiff has not argued that the exclusion of consequential damages is unconscionable, Plaintiff may not seek consequential damages under this contract. Furthermore, because the contract limits Defendant's potential damages to those expressly provided for in the contract, and the only express warranty in the contract explicitly excludes incidental damages beyond the cost of repair, Plaintiff may not seek additional incidental damages under this contract.

■ Defendant also argues that the fourth clause on the warranty and conditions page prevents Plaintiff from seeking damages for delays. The clause at issue states that Defendant will "use all reasonable means to deliver within the time specified, but assumes no liability for loss or damage arising from delay, or no [sic] fulfillment of contract by reasons of fires, strikes, delays in transportation, regulations of the United States Government, or any cause which is unavoidable or beyond its control."

Defendant contends that this clause has two effects. First, it excludes all damages caused by delays. Second, it excludes damages for non-fulfillment of the contract due to "fires, strikes, delays in transportation, regulations of the United States Government, or any cause which is unavoidable or beyond [Defendant's] control." Plaintiff argues that this clause, when read in the context of the remainder of the contract, only excludes damages for delays stemming from the specifically enumerated causes. As a matter of contractual interpretation, and as a matter of grammar, Defendant has the superior argument.

■ Maryland courts recognize a rule of construction which dictates that "a qualifying clause ordinarily is confined to the immediately preceding words or phrase—particularly in the absence of a comma before the qualifying clause." *Sullivan v. Dixon,* 280 Md. 444, 373 A.2d 1245, 1249 (1977); *see also Kane v. Bd. of Appeals of Prince George's County,* 390 Md. 145, 887 A.2d 1060, 1070 (2005); *Maloof v. Maryland Dept. of the Env't,* 136 Md.App. 682, 767 A.2d 372 (1999).

In *Sullivan,* the Court of Appeals of Maryland interpreted a statute which

states that "a professional corporation may invest its funds in real estate, mortgages, stocks, bonds, or any other type of investment, and may own real or personal property necessary for the performance of a professional service." *Sullivan,* 373 A.2d at 1249. The appellant in *Sullivan* contended that the phrase "necessary for the performance of a professional service" modified the entire sentence. The Court of Appeals rejected the appellant's interpretation. It held that the qualifying phrase only modified the "clause dealing with ownership of property," and was not intended to "restrict the power of professional corporations to invest their funds." *Id.* at 1245. The Court of Appeals based this conclusion on its recognition that "the comma after the word 'investment' separated the preceding words from the qualifying phrase." *Id.; see also Kane,* 887 A.2d at 1070 (analyzing *Sullivan*); *Maloof,* 767 A.2d at 383.

█ Under the rule of construction described in *Sullivan,* the word "delay" is not modified by the phrase "by reasons of fires, strikes, delay in transportation, regulations of the United States Government, or any cause which is unavoidable or beyond its control." Rather, the comma following the word "delay" creates a separate and distinct clause.[2] Therefore, under both a plain reading of the text and the *Sullivan* rule of construction, Plaintiff is contractually barred from seeking damages for delays.[3]

## B. Failure of Essential Purpose

The exclusive remedy provided by the repair and replacement clause of the Pur-

chase Order did not fail "of its essential purpose." Under Maryland Commercial Code § 2–719(2), a clause which limits the remedies available for a breach of contract is unenforceable if "circumstances cause [the remedy] to fail of its essential purpose." Md.Code Ann., Com. Law § 2–719(2); *Coastal Modular Corp. v. Laminators, Inc.,* 635 F.2d 1102, 1106. This provision is intended to ensure that neither party is deprived of the benefit of its bargain, and reflects the idea that "it is of the very essence of a sales contract that at least minimum adequate remedies be available." Md.Code Ann., Com. Law § 2–719(2) cmt. 1.

The Fourth Circuit has cautioned that, in commercial settings, "the rule that the agreed-upon allocation of commercial risk should not be disturbed is particularly appropriate." *Riegel Power Corp. v. Voith Hydro,* 888 F.2d 1043, 1046 (4th Cir.1989). Therefore, "[g]enerally, in commercial cases, the 'essential purpose' exclusion arises only where the seller has refused to make repairs as he was required or where he cannot repair the product." *Id.* In cases where the goods at issue are "experimental items, of complicated design, or built especially for the buyer," the Fourth Circuit has also stressed that:

> the repair or replacement clause may simply mean that the seller promises to use his best efforts to keep the goods in repair and working condition, and that the buyer must put up with the inconvenience and loss of down time.

*Id.* (quoting 3 *Uniform Commercial Code Series,* 447 (Callaghan 1984)).

---

2. Thus, Plaintiff's interpretation would arguably have been correct if there had been a comma after the phrase "nonfulfillment of contract," or if there had *not* been a comma after the word "delay."

3. Contractual restrictions on damages for delay are enforceable in Maryland in the absence of intentional wrongdoing, gross negligence, fraud or misrepresentation. *State Highway Admin. v. Greiner Eng'g Sci.,* 83 Md. App. 621, 577 A.2d 363 (1990).

■ In this case, the Purchase Order was negotiated by sophisticated parties in a commercial setting, and involved goods of complicated design that were built especially for the buyer. *See* Amended Compl. ¶ 7 (noting that the contract was for "highly custom formwork"). Plaintiff has not alleged that Defendant was unable or unwilling to make the repairs required by the contract. Rather, Plaintiff concedes that the formwork was "eventually patched together to the point where it was usable." Pl's Opp. at 21. Because Plaintiff has not alleged bad faith or inability to repair the formwork, and because the formwork was actually repaired, this exclusive remedy provision did not fail of its essential purpose.[4]

## C. PLAINTIFF'S NEGLIGENCE CLAIM

■ Plaintiff's negligence claim is partially barred by the economic loss doctrine. Under the economic loss doctrine, plaintiffs are generally precluded from bringing negligence actions to recover purely economic losses. *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 916 A.2d 257, 266 (2007); *U.S. Gypsum Co. v. Mayor & City Council of Baltimore*, 336 Md. 145, 647 A.2d 405, 410 (1994). However, under the *Whiting–Turner* exception to that doctrine, a plaintiff may recover for the cost of correcting negligently created defects that produce "a substantial and unreasonable risk of death or personal injury." *Council of Co–Owners Atlantis Codo., Inc. v. Whiting–Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336, 345 (1986); *Lloyd*, 916 A.2d at 266 (citing *Gypsum*, 647 A.2d at 410).

■ Maryland courts use a two prong analysis to determine whether the *Whit-*

ing–Turner exception applies to a particular case. This analysis includes consideration of both (1) "the nature of damage threatened" and (2) the "probability of damage occurring." *Lloyd*, 916 A.2d at 266 (citing *Morris v. Osmose Wood Preserving*, 340 Md. 519, 667 A.2d 624, 631 (1995)). The exception will apply in cases where there is either a substantial likelihood of injury, or where resulting injuries are likely to be severe. *Morris*, 667 A.2d at 631 (stating that "if the possible injury is extraordinarily severe, i.e. multiple deaths, we do not require the probability of the injury occurring to be as high as we would require if the injury threatened were less severe, i.e. a broken leg or damage to property.")

In *Whiting–Turner*, residents of a condominium brought a tort suit against the general contractor, developer and architects involved in the planning, inspection and construction of a condominium building. *Whiting–Turner Contracting Co.*, 517 A.2d at 336. The residents alleged that the defendants negligently failed to construct the building's "ten vertical utility shafts with materials having a fire resistance rating of two hours." *Id.* at 338. This alleged construction defect purportedly created "a threat to the safety and welfare of the owners and occupants of the [condominium]." *Id.* The defendants argued that the suit was barred because there had not yet been any personal injury or property damage caused by their negligence. The Court of Appeals of Maryland stated that a plaintiff should not "have to wait for a personal tragedy to occur in order to recover damages to remedy or repair defects[.]" *Id.* at 345. Therefore, if conduct creates a serious risk of death or

---

4. Even if the formwork had proven to be irreparable, the absence of bad faith or intentionally dilatory acts by Defendant while repairing this unique and custom-made equip-ment would also likely negate Plaintiff's claim that the remedy provision failed of its essential purpose.

738

personal injury, the plaintiff may recover "the reasonable cost of correcting the dangerous condition." *Id.* at 345; *see also U.S. Gypsum Co.*, 647 A.2d at 411 (holding that the economic loss doctrine did not bar plaintiff from recovering in tort for cost of removing asbestos-containing building material because the asbestos was likely to cause serious injury if not removed).

■■■ In this case, a sizeable portion of Plaintiff's damages were allegedly caused by Defendant's late delivery of the formwork. Because Defendant's tardiness did not create any danger of death or injury, these damages do not fall under the *Whiting–Turner* exception, and shall be excluded under the economic loss doctrine. However, Plaintiff has also alleged damages stemming from the cost of repairing poorly designed formwork. Although Plaintiff does not specifically allege that this formwork "create[d] a substantial and unreasonable risk of death or personal injury" *(Lloyd,* 916 A.2d at 266), Plaintiff does present evidence to support its allegation that the formwork "often buckled, bowed, moved, and at times blewout." Amended Compl. ¶ 36. A reasonable jury could hold that this unstable concrete formwork posed a substantial threat to the safety of workers. Therefore, Plaintiff has raised triable issues of material fact regarding (1) whether Defendant was negligent in designing and building the formwork, and (2) whether the formwork was so poorly designed that it created a substantial and unreasonable risk of death or personal injury.[5]

**D. Plaintiff's Claim for Indemnification**

Plaintiff's Amended Complaint also seeks indemnification from Defendant for claims against Plaintiff stemming from Defendant's negligence. Defendant argues that Plaintiff's indemnification claim is subject to summary judgment because (1) Plaintiff has not shown that Defendant was negligent, and (2) no claims have been brought against Plaintiff based on Defendant's alleged negligence.

■■■ Defendant has a clear contractual duty to indemnify Plaintiff for claims that arise out of Defendant's negligence. Attachment "A" to the Purchase Order signed by the parties states that Defendant "agrees to indemnify [Plaintiff] against loss on account of any claim against [Plaintiff] caused by the negligence of [Defendant] in performance under this contract." Therefore, to the extent that Plaintiff has been rendered liable for injuries to third parties stemming from Defendant's negligence, Defendant must indemnify Plaintiff, and to that extent Defendant's Motion shall be denied.

■■■ However, Plaintiff may not use this contractual language to circumvent the liability exclusions in the Purchase Order and seek reimbursement for the contractual obligations to other parties created by Defendant's delays in delivery. Thus, to the extent that Plaintiff seeks indemnification for contractual obligations owed by it to third parties, Defendant's Motion for Summary Judgment shall be granted.

**Conclusion**

The clear language of this contract disavows all damages not specifically enumerated. Because the enumerated damages are exclusively limited to the cost of repairing faulty goods, and the exclusive

5. However, because Defendant is under a contractual obligation to provide for the "repair or replacement of any defective property," requiring Defendant to bear the costs of curing the allegedly dangerous defects in the formwork is not likely to substantially increase Defendant's potential liability.

remedy did not fail of its essential purpose, Defendant's motion for partial summary judgment on the issue of contractual damages must be granted. However, because a reasonable jury could find that a portion of Plaintiff's negligence claim falls within the *Whiting–Turner* exception to the economic loss rule, Defendant's Motion for Summary Judgment on the issue of damages for negligence shall be granted in part and denied in part. Finally, Defendant is contractually obligated to indemnify Plaintiff for negligence, but not for the contractual claims of third parties, and on this issue Defendant's Motion shall also be granted in part and denied in part. A separate order follows

## ORDER

Upon consideration of Defendant's Motion for Partial Summary Judgment [Paper No. 32], Plaintiff's response thereto [Paper No. 34], Defendant's reply [Paper No. 35], the record before the Court, the oral arguments before the Court on December 3, 2007, and for the reasons set forth in the accompanying Memorandum Opinion, it is this 9th day of January, 2008, by the United States District Court for the District of Maryland, hereby

**ORDERED** that Defendant's Motion for Partial Summary Judgment is **GRANTED IN PART AND DENIED IN PART.**